[No. 10609.   Department One.   October 18, 1913.]

*In the Matter of the Estate of* ALBERT J. HOOPER.
PETER McGREGOR, *Executor, Appellant*, v. RAYMOND
HOOPER *et al., Respondents.*[1]

EXECUTORS AND ADMINISTRATORS — REMOVAL — NONINTERVENTION WILL—DISCHARGE OF TRUST. Where the only property held in trust by executors under a nonintervention will was certain shares of stock in a corporation, bequeathed to specified legatees or charged with the payment of specific legacies, and the shares were sold for full value under a power of sale in the will and the proceeds safely invested in interest bearing securities, maturing when the legacies were payable, the estate is fully administered; and the executors cannot be removed, under Rem. & Bal. Code, § 1444, for failure to faithfully discharge their trust, on petition of a legatee who did not demand his legacy and the proceeds of his stock, but merely sought to question the subsequent dealings of the executors with the corporation, which were purely personal transactions in no way affecting the conditions of the trust.

SAME—DISCHARGE OF TRUST—FAILURE TO GIVE NOTICE TO CREDITORS. The failure of executors under a nonintervention will to give notice to creditors or obtain a decree of solvency, is an irregularity only, and not ground for their removal, where there were no creditors, the estate was solvent, and the trust had been faithfully discharged.

Appeal from an order of the superior court for Adams county, Holcomb, J., entered February 5, 1912, upon findings in favor of the petitioner, removing an executor of an estate, after a hearing before the court. Reversed.

*J. N. Pickrell* and *Voorhees & Canfield,* for appellant.

*W. W. Zent,* for respondent.

[1]Reported in 135 Pac. 813.

CROW, C. J.—Appeal of Peter McGregor, one of the executors of the last will and testament of Albert J. Hooper, from an order removing him as such executor.

On January 27, 1908, Albert J. Hooper, a resident of Adams county, died testate, having executed a nonintervention will and a codicil thereto. These instruments were duly admitted to probate by the superior court of Adams county, and Lavina Z. Hooper, widow of the decedent, Albert Ernest Hooper, son of the decedent, and the appellant, Peter McGregor, named in the will as executrix and executors, were, in August, 1908, qualified as such without letters testamentary. On January 16, 1909, they filed an inventory and appraisement, which discloses that the testator died seised of an undivided one-half interest in three hundred and sixty acres of land, appraised at $3,600, and 190 shares of the capital stock of the Hooper Land and Livestock Company, a corporation, appraised at $147 per share, or $27,930, which constituted his entire estate. The Hooper Land and Livestock Company had been incorporated with a capital stock of 450 shares, of the par value of $100 each. At the date of the testator's death, he held and owned 190 shares; Lavina Z. Hooper, his widow, held and owned 100 shares; Arthur E. Hooper, his brother, held and owned 150 shares; and Albert Ernest Hooper, his son, held and owned 10 shares. By his will, the testator devised his undivided one-half of the real estate to his son Albert Ernest Hooper, the same to vest immediately. He further devised seven and one-half shares of the capital stock of the Hooper Land and Livestock Company to each of his seven children, Mary Hooper Taylor, Alice Hooper, Albert Ernest Hooper, Ethel Hooper, Helen Hooper, Raymond Hooper, and Walter Victor Hooper; two shares to each of his grandchildren, Roena Marie Bruihl and Agnes Zeph Bruihl; and three shares to each of his grandchildren, Dewey Dale Bruihl and Mabel Hooper Bruihl; the total devises of capital stock thus made to his children and grandchildren being sixty-two and one-half shares. By the terms

of the will, he also devised $1,500 to each of his minor sons, Raymond Hooper and Walter Victor Hooper, to be paid to them when they should severally reach the age of majority. All of the remainder of his estate, being 127½ shares of the capital stock of the Hooper Land and Livestock Company, was devised to the widow, Lavina Z. Hooper.

The will provided that the capital stock devised to the testator's children should not be distributed to them prior to the year 1918 (except as otherwise in the will provided), and that until such time the same should be held in trust by the executrix and executors, who should annually pay to the widow of the decedent, for her use and benefit, the net income earned by the respective shares thus bequeathed to the children, until such time as they should severally attain the age of twenty-one years; and that upon attaining the age of twenty-one years, and annually thereafter until the year 1918, each child should receive the net income of his or her respective shares. Relative to the stock devised to the grandchildren, the will further provided that it should not be distributed to them prior to the year 1924; that until such time the stock should be held in trust by the executrix and executors, who should annually pay to the widow of the decedent, for her use and benefit, the net income earned by the respective shares thus bequeathed, until such time as the grandchildren should severally attain the age of twenty-one years; and that annually thereafter, and until the year 1924, each grandchild should receive the net income of his or her respective shares. The ninth paragraph of the will reads as follows:

"I do hereby will and direct that if at any time before the aforesaid years 1918, or 1924, my said executrix and executors or such of them as may accept said trust or the survivors of them or a majority of them, shall deem it for the best interests of my estate or any of my aforesaid children or grandchildren, to sell or otherwise dispose of all or any portion of the respective shares of stock in the aforesaid 'Hooper Land & Livestock Company,' a corporation, I herein bequeath any such child or grandchildren, that my said executrix and

executors, or such of them as may accept said trust or the survivors of them or a majority of them, in their discretion, are hereby authorized and fully empowered to sell or otherwise dispose of any such shares of stock, and for this purpose to execute any and all instruments under seal or otherwise, requisite and necessary therefor, and in such event, or any child or grandchild attaining the age of 21 years, to advance and pay over unto any such child or grandchild attaining the age of 21 years, aforesaid, the full sum then realized from any such sale or other disposal thereof, less the actual expenses necessarily incurred on account of any such sale or transfer, and of which due account must be kept, and such sale and transfer to be in all respects as valid and binding as if I myself had been living and executed the same."

It is conceded that the estate was solvent and free from debt, but the record fails to show that any finding of solvency was made or entered by the superior court, or that any notice to creditors was published. An order was entered reciting that notice to creditors had been published; that a year had elapsed; and that creditors were barred. This order was entered at the instance of attorneys representing the executrix and executors. No proof of any publication was made or filed, and the trial court finding that no publication had in fact been made, vacated the order barring creditors. No claims of creditors were presented other than one presented by a sister of the decedent. This claim was at first rejected by the executors, but was finally paid by Albert Ernest Hooper, individually.

Immediately after the testator's death, Albert Ernest Hooper assumed exclusive possession and control of the real estate devised to him, and the widow, under the terms of the will, at once became the owner of the 127½ shares of stock devised to her as hereinbefore stated, subject, however, to a lien in favor of Raymond Hooper and Walter Victor Hooper for their respective legacies of $1,500 each. Lavina Z. Hooper and Albert Ernest Hooper, as officers and a majority of the trustees of the Hooper Land and Livestock Company, took immediate charge and control of that cor-

poration, and managed the same without the assistance of Peter McGregor, who, in his personal capacity, was neither a stockholder nor an officer. After the testator's death, but prior to the date upon which the executrix and executors were qualified, a dividend was declared. Sometime after the testator's death, Arthur E. Hooper, brother of the testator, who held 150 shares of the capital stock, became dissatisfied with the management of the corporation, and made a proposal to Lavina Z. Hooper and Albert Ernest Hooper to either buy their capital stock or sell his upon the basis of $200 per share. This offer they declined. Thereafter the son Albert Ernest Hooper purchased the 150 shares held by his uncle, for $175 per share; paying the purchase price partly in cash and partly with his promissory notes, indorsed by Lavina Z. Hooper, Arthur E. Hooper retaining possession of the stock as collateral security for the purchase money notes. The cash then paid was procured as a loan from a bank upon notes of the corporation. Thereafter, the widow, Lavina Z. Hooper, purchased from the five children of the decedent who had reached their majority, the capital stock which had been devised to them, at the agreed price of $200 per share. She also purchased from her son Albert Ernest Hooper the 150 shares formerly owned by his uncle, and the ten shares which he held at the date of the testator's death. By these various transactions, the widow, Lavina Z. Hooper, acquired all of the capital stock of the corporation, except 15 shares which had been devised to Raymond Hooper and Walter Victor Hooper, two of the minor children, and ten shares devised to the five minor grandchildren. No dividends were made after the date upon which the executrix and executors qualified.

By the various transactions above mentioned, and under the management of Albert Ernest Hooper, the corporation became involved for a very considerable indebtedness, and the widow, who had in the meantime purchased from her son the undivided half of the land which had been devised to him, and had indorsed his notes in other transactions, also became

heavily involved. To relieve this situation, the Hooper Land and Livestock Company sold all of its live stock to a corporation known as the Taylor Land and Livestock Company. Appellant, Peter McGregor, was heavily interested as a stockholder in the latter company. About the same time, or shortly thereafter, the widow, Lavina Z. Hooper, leased to the Taylor Livestock Company the 360 acres of land owned by her, and the Hooper Land and Livestock Company also leased to the Taylor Land and Livestock Company several thousand acres of grazing land owned by it, for ten years, at a total rental of $3,000 per year. Shortly thereafter, upon an *ex parte* application made to the superior court of Adams county, and the written consent of Peter McGregor and Albert Ernest Hooper, executors, Lavina Z. Hooper was permitted to resign as executrix of the estate. After such resignation, she, as an individual, purchased from Peter McGregor and Albert Ernest Hooper, the remaining executors, the 15 shares of stock devised to Raymond Hooper and Walter Victor Hooper, and the ten shares devised to the grandchildren, thus becoming the owner of all of the capital stock of the corporation. In payment for these 25 shares, and to secure the legacies of $1,500 each to Raymond Hooper and Walter Victor Hooper, she executed and delivered to the remaining executors her notes amounting to $8,000, the same severally falling due at the dates when the minor children and grandchildren would arrive at the age of twenty-one years, and also executed and delivered to the executors her first mortgage deed upon real estate amply sufficient to secure their payment. Thereafter, the Hooper Land and Livestock Company was disincorporated.

Sometime after the completion of these various changes and transfers, Lavina Z. Hooper became dissatisfied with the leases which she and the corporation had made. She concluded that the rental she was receiving was inadequate and unjust. Thereupon, she requested the Taylor Land and Livestock Company to surrender the leases. This the Taylor Land and

Livestock Company consented to do upon the condition that she would refund $1,000 expended by it for betterments upon the real estate leased. This offer she rejected. Shortly thereafter, her son Raymond Hooper, who had reached the age of majority, by petition instituted this proceeding to remove Peter McGregor as executor, charging him with fraudulent acts, with failing and neglecting to properly care for the estate, and with being unfit to act as executor. Upon citation, McGregor appeared, and by answer denied the allegations of the petition. Upon his affirmative answer, the widow, as executrix, and Albert Ernest Hooper, as executor, were also cited to appear and answer. Upon the hearing, all parties appearing in person and by counsel, a large mass of evidence was admitted, from which we find the foregoing facts. After hearing the evidence, the trial judge filed a written opinion in which, *inter alia,* he made the following statements and holdings:

"Whether or not Lavina Z. Hooper and Albert Ernest Hooper were overreached in the matter of leasing the property by Peter McGregor is beyond the scope of this inquiry. Their transaction in such matter was purely personal and private transaction. It affected the conditions of the trust reposed in them as executors in no way whatever. If Lavina Z. Hooper has cause for complaint and redress concerning said transaction, it is as an individual and against him or them who overreached and defrauded her. . . .

"It now appears satisfactorily to the court that there never was any notice to creditors published at any time or at all; and that this order above referred to was, by the court, inadvertently granted, and its recitals are untrue, and that it should be vacated and held for naught; and it is now so found and held. . . .

"It also appears that no order of solvency has been made and entered upon the coming in of the inventory, or upon any other showing in the probate proceedings herein. It must be and is found, as a fact, that the estate was in fact solvent. . . .

"For the reasons, therefore, and those reasons only, that the executors failed and neglected to cause notice to creditors to be published in proper time or at all, and for the reason that

they have indifferently attended to their duties as executors, and for the reason that there is such hostility between the executors (as executors) and the beneficiaries as might interfere with their proper management of the estate, the court is convinced that the exercise of a proper discretion in this matter requires that the said executors be and they will be removed."

It is apparent that this proceeding was not in reality instituted to protect rights of Raymond Hooper, who had recently arrived at the age of majority, but that its real purpose was to test the validity of the leases to the Taylor Land and Livestock Company and in some manner secure their cancellation. The leases are a matter entirely personal between Lavina Z. Hooper and the Taylor Land and Livestock Company, and cannot be considered in this proceeding to which the Taylor Land and Livestock Company is not a party. The only purpose of admitting evidence relative to these leases and the manner in which they were obtained must have been to show that Peter McGregor had neglected the affairs of the estate, or had been guilty of fraudulent acts in obtaining them for the benefit of the Taylor Land and Livestock Company in which he was heavily interested. From the weight of the evidence, we conclude that the leases were sought and obtained by Lavina Z. Hooper and Albert Ernest Hooper for the purpose of relieving them and the Hooper Land and Livestock Company from an embarrassing financial situation, and that they were accepted by the Taylor Land and Livestock Company in perfect good faith.

The controlling question before us is not whether Peter McGregor fraudulently obtained the leases, but whether he has been guilty of fraudulent acts or failure to discharge his duties, to the injury or detriment of the petitioner, Raymond Hooper. The petitioner's capital stock was sold for $200 per share, under the authority of paragraph nine of the will. We are satisfied, and the trial court was satisfied, that it was sold for all it was worth. The purchase money due the petitioner from the sale, and his $1,500 legacy, were amply protected

by secured mortgage notes maturing and payable at the date of his majority. On arriving at his majority, he made no demand for the payment of these notes, but instead did demand the capital stock, knowing the corporation had been dissolved. If there was then any difference in the value of the notes and the shares of stock devised to him which had been sold, it is manifest from the evidence that the secured notes were of the greater value. The voluminous evidence cannot be stated in an opinion of reasonable length. It relates principally to the transactions between the appellant, or the Taylor Land and Livestock Company, upon one part, and Lavina Z. Hooper, Albert Ernest Hooper, and the Hooper Land and Livestock Company, upon the other part. The estate held in trust by the executrix and executors, to all practical intents and purposes, was only the 62½ shares of capital stock in the Hooper Land and Livestock Company, which had been bequeathed to the testator's children and grandchildren, and the lien on the stock devised to the widow as a residuary estate to secure the two devises of $1,500 each to Raymond Hooper and Walter Victor Hooper. The trial court found $200 per share to have been the fair market value of the stock sold by the executors, which had been devised to the testator's minor children and grandchildren. At the time this sale was made, Lavina Z. Hooper honestly supposed she was no longer an executrix of the estate, and that she was dealing with the remaining executors in her individual capacity. The record shows beyond question that all legatees who have reached their majority, other than the petitioner, have received their legacies; that the legacies due the petitioner have been invested in secured interest bearing notes maturing at the date of his majority; and that all legacies to Walter Victor Hooper, the testator's minor son, and to the minor grandchildren, have been safely invested in interest bearing notes which will mature when said legatees severally reach the age of twenty-one years. These securities constitute the only remaining portion of the estate to be charged

against the executors.   Otherwise the estate has been fully administered.   Should appellant be removed it would be impossible for his successor, when appointed, to more fully protect and care for these legacies.

The petitioner, in his brief, fails to show wherein he has been injured or has sustained any loss.   The entire burden of his argument is that some undue advantage has been taken of Lavina Z. Hooper by the appellant in the purchase of the live stock and in obtaining the leases.   That issue does not concern the petitioner.   The trial court could make no order relative to the leases which would be binding upon the lessee corporation.   The vital question presented herein is, whether Peter McGregor, as executor, has faithfully cared for and promoted the interest of all parties taking under the will. Before an order for his removal would be authorized, it would be necessary to find that some trust created by the will has not been faithfully discharged, and that the parties interested, or some of them, have been damaged, or are about to be damaged, by his acts.   If, under the authority of Rem. & Bal. Code, § 1444 (P. C. 409 § 283), the trial court, upon a proper petition and hearing, should find that the trust created by the will has not been faithfully discharged, and that parties interested, or any of them, have been, or are about to be, damaged by the executor's acts, it could then order the issuance of letters testamentary, and thereafter all matters and proceedings in the estate would be conducted as in the usual administration of estates under the supervision of the court. The order removing Peter McGregor as executor was not justified.

The failure to publish notice to creditors was an irregularity, as was also the failure of the trial court to enter an order declaring the solvency of the estate.   It is conceded, however, that the estate was solvent and free from debt.   As far as Peter McGregor is concerned, the record shows that he has faithfully secured and protected every interest of the petitioner.

The judgment is reversed, with instructions to dismiss the petition. Appellant will recover his costs from the petitioner.

PARKER, GOSE, and MOUNT, JJ., concur.