[No. 13761. Department Two. May 18, 1917.]

*In the Matter of the* ESTATE OF A. C. ENNIS.

LOVE, WARREN & MONROE COMPANY *et al., Appellants and Claimants,* SUMNER COMPANY *et al., Claimants,* v. EMMA C. ENNIS, *Administratrix etc., et al., Respondents.*[1]

APPEAL—PARTIES—NOTICE—SERVICE ON COPARTIES—CLAIMS UNDER JURISDICTIONAL AMOUNT. Under Rem. Code, §§ 1719, 1720, requiring service of notice of appeal upon coparties similarly affected, it is not necessary, upon an appeal in probate disallowing claims of creditors, to serve notice upon coparties whose claims were for less than $200 and hence unappealable under Const., art. 4, § 4, since they had no appealable interest or right to appeal.

EXECUTORS AND ADMINISTRATORS—POWER TO CARRY ON BUSINESS. A parol direction, prior to death, does not authorize an administratrix to continue the business of the deceased for the benefit of the family.

PRINCIPAL AND AGENT—AUTHORITY OF AGENT—RATIFICATION. An administratrix is estopped to assert that she did not authorize her manager to continue the business of a store and purchase new goods, where she was employed in the store when the goods were coming in, did not repudiate them but promised to pay for them, and obtained an order of court to permit a reduction sale over the counter.

EXECUTORS AND ADMINISTRATORS — CONTINUANCE OF BUSINESS — STATUTES—ORDER. Under Rem. Code, § 1497, providing that the court may allow the administrator to sell all or part of the personal estate at private sale, it is discretionary to authorize a temporary continuance of the decedent's business; but an order authorizing an administratrix to sell a stock of goods at private sale in such manner as to her seems best, does not justify the purchase of additional merchandise to keep up the stock or more than necessary to sell the remaining stock to the best advantage.

SAME — CONTINUANCE OF BUSINESS — RIGHTS OF TRADE CREDITOR. Where an administratrix continues a business in violation of the rule forbidding the purchase of new stock, trade creditors furnishing the business with merchandise are restricted to that part of the estate assets embarked in the business to which they contributed.

SAME — CONTINUANCE OF BUSINESS — CONSENT OF HEIRS AND GENERAL CREDITORS—ESTOPPEL. Heirs consenting to the unauthorized

[1]Reported in 165 Pac. 119.

continuance of the decedent's business by the administratrix are estopped to dispute the liability of the trade assets of the estate to the claims of trade creditors, where they had notice of the purchase of fresh stock; and the same is true of a general creditor who was cognizant that the business had been conducted as a going concern and took no action to assert its rights; but such estoppel does not apply as to the general assets of the estate.

Appeal from a judgment of the superior court for Grays Harbor county, Abel, J., entered June 6, 1916, upon findings in favor of the defendants, denying the claims of creditors of the estate of a decedent, tried to the court. Reversed.

*Wettrick, Anderson & Wettrick* and *W. W. Keyes,* for appellants.

*Hogan & Graham,* for respondent Hayes & Hayes.

*E. E. Boner,* for respondents Ennis *et al.*

FULLERTON, J.—A. C. Ennis died intestate on January 23, 1911, leaving surviving him his widow, Emma C. Ennis, and four adult children. His estate consisted of a stock of general merchandise at Elma, Washington, appraised at $4,000, and realty in the cities of Spokane and Centralia appraised at $11,250. The widow was appointed administratrix of the estate on March 11, 1911, and made weekly publication of her notice to creditors from April 7 to May 5, 1911. Aside from about $800 of indebtedness for goods in the store, which was taken care of by the widow's advancement of personal funds and by the proceeds of sales of merchandise from the store, the only indebtedness existing at the time of the death of A. C. Ennis was a note for $2,000, with accrued interest, executed to Hayes & Hayes, Bankers, and a claim for $400 due the son Mark Ennis for money loaned to the deceased. All of the heirs, following the death of A. C. Ennis, agreed among themselves that:

"Donald Ennis might operate the drygoods store at Elma, Washington, in the same manner as if he owned the same, and that, when it came to final distribution of the estate, the

12—96 WASH.

store or stock of merchandise should go to the said Donald Ennis and be distributed to him at the appraised value, said Ennis to be allowed in the distribution an extra $1,000 over and above the amount to which he was legally entitled, and if after the allowance of such $1,000 extra to the said Donald Ennis, the said stock of goods would be in excess of what the said Donald Ennis was entitled to under said arrangement, then the said Donald Ennis would pay the other heirs *pro rata* such excess."

On February 23, 1912, after the store had been conducted by Donald Ennis for more than a year without an order of court, the administratrix and all the heirs presented a petition for an order of private sale of the merchandise, containing the following recitals:

"That by an agreement among the heirs it was thought advisable to keep said store running during the administration of the estate with a view to making some profit to the estate to aid in paying of any debts against the estate and the expenses of administration; but that owing to the continued depression in business it has been impossible to realize anything in the way of profit from the business and it is not thought by us advisable to continue said business.  . . .

"Wherefore, we your petitioners, being all the heirs of above entitled estate, pray an order of this (court) permitting and empowering the administratrix of said estate to sell said stock of goods at private sale in such manner as may seem to her for the best interests of this estate."

Upon this petition, the court, on March 4, 1912, made its order:

"That said administratrix Emma C. Ennis be and she is hereby authorized and empowered to sell said stock of goods at private sale in such manner as may to her seem best and of her actions make due report to this court."

The business as conducted by Donald Ennis not proving profitable at Elma, it was shifted to Centralia in the month of August, 1913, and in the period between October and December of that year Donald incurred debts in the sum of $3,824.82 for merchandise placed in stock at the Centralia

store. Donald Ennis was taken ill in December, 1913, and died January 16, 1914. In February, 1914, the administratrix and all the remaining heirs presented to the court a petition for authority to sell off the stock at a reduction sale over the counter, upon which the court made the following order:

"It now appears that the administratrix in the above entitled matter has petitioned the court for an order to sell at reduction sale, over the counter, under a sales manager, the stock of dry goods belonging to said estate at Centralia, Washington, and pay said sales manager 10% of the gross receipts of said sale, and the incidental expenses necessary for putting on such sale, and that when said sale has been completed, that the remaining goods be sold in the lump sum at the best price obtainable. To which petition all of the heirs and persons interested in said estate have signified their assent in writing.

"It is therefore ordered that the administratrix put on said reduction sale over the counter, under a sales manager, and that she is authorized to pay the said sales manager 10% of the gross receipts and the necessary advertising, labor and incidentals necessarily incurred in said sale; that when said sale has run its course in the opinion of the administratrix, then she is hereby authorized to sell whatever goods are remaining in the lump sum at private sale for the best price obtainable."

A sale was had under this order and the net amount of $650.85 realized after the payment of expenses of sale, according to the findings made by the court. The report of the administratrix, however, shows $879.90 as net proceeds of sale after payment of expenses for conducting the sale in the sum of $650.85.

The various creditors who had sold goods to the Ennis store during the latter part of its operation at Centralia presented to the administratrix for allowance their claims, totaling $3,824.82. On January 2, 1915, the administratrix filed a report disavowing liability, and petitioned the court for the issuance of a citation against such claimants to show cause

why their claims should not be disallowed. A show cause order for that purpose was entered directing the claimants to appear before the court on November 19, 1915, and after hearing thereon, a judgment was entered disallowing and rejecting the claims. From that judgment, the creditors appeal to this court.

The respondents interpose a motion to dismiss the appeal on the ground of failure to serve notice on all the parties appearing before the court. On the petition of the administratrix, some twenty-eight claimants were cited to appear before the superior court of Grays Harbor county to show cause why their claims should not be disallowed. A hearing was had on November 19, 1915, and judgment subsequently rendered disallowing and rejecting all the claims. These claims were in various amounts, ranging from $923.98 to $13.27, all except three of them being below the sum of $200. On July 5, 1916, the three claimants for sums in excess of $200 served and filed their notice of appeal. Service was made only on the prevailing parties to the judgment, who were the administratrix and a general creditor who had resisted the claims. No service was made on the coparties appearing in the cause whose claims were under $200 in amount. Motion is made by the prevailing parties to dismiss the appeal for failure to serve notice upon all the parties appearing in the action.

The motion is resisted by the appellants on the ground that their coparties below had no appealable interest because their respective claims were each below the amount of $200, and hence unappealable under Const., art. 4, § 4, which denies appellate jurisdiction to the supreme court in civil actions for the recovery of money or personal property when the original amount in controversy does not exceed $200. Rem. Code, § 1719, prescribes the service of written notice of appeal on the prevailing party. Id., § 1720, provides that all parties similarly affected by the judgment may join in the notice of appeal. Parties not joining have the right to serve an independent notice of appeal within ten days after the giving or

service upon them of the original notice, or may join in the appeal already taken, and any "party who does not so join shall not derive any benefit from the appeal unless from the necessity of the case." Under our holdings as to the necessity of service of notice of appeal upon all parties appearing in the action, the appeal herein is subject to dismissal, unless service of notice upon the omitted parties is unnecessary by reason of the fact that they had no right of appeal. It is plain that, under our constitution, none of the claimants for sums under $200 could prosecute an independent appeal, and hence they would have no right of appeal. Nor would they have such an appealable interest as would justify their joinder in the appeal by others with whom they were similarly affected. We have held on numerous occasions that service of notice is required on those only who, in addition to appearing in the action, had some right of appeal. *Carstens & Earles v. Seattle*, 84 Wash. 88, 146 Pac. 381, Ann. Cas. 1917A 1070; *Sipes v. Puget Sound Elec. R. Co.*, 50 Wash. 585, 97 Pac. 723; *Smalley v. Laugenour*, 30 Wash. 307, 70 Pac. 786; *Soderberg v. McRae*, 67 Wash. 104, 120 Pac. 878. The situation here is aptly expressed in *Robertson Mtg. Co. v. Thomas*, 60 Wash. 514, 111 Pac. 795:

"We can look no further than to determine (1) whether he was a party to the action appearing in the case, and (2) whether he is entitled to an appeal. If these two conditions concur, it must be presumed that he is affected by the judgment; whether wrongfully affected, must be determined on the appeal."

The other grounds for dismissal are without merit. The motion to dismiss the appeal is denied.

Passing to the merits of the appeal, it is settled law that an executor, under powers conferred by will, may carry on the business of a decedent if such testamentary power is conferred in distinct and positive terms. *Eufala Nat. Bank v. Manassas*, 124 Ala. 379, 27 South. 258; *Willis v. Sharp*, 113 N. Y. 586, 21 N. E. 705, 4 L. R. A. 493. In the present

case, A. C. Ennis died intestate, but prior to his death had expressed a wish that his son Donald be entrusted with the carrying on of his business, and that, on settlement of the estate, Donald should be paid $1,000 over and above his distributive share. Such a parol direction, prior to death, is not, however, recognized in law as a sufficient justification for a personal representative to continue the business for the benefit of the family or estate. *Raynes v. Raynes*, 54 N. H. 201; *Matter of McCollum*, 80 App. Div. 362, 80 N. Y. Supp. 755. The general rule is that a personal representative has no power to continue the business of a decedent unless expressly authorized by will, by statute, or by an order of the court. The only statute we have on the subject is Rem. Code, § 1497, which provides:

"If it be made to appear to the satisfaction of the court that it will be for the interest of the estate to allow the executor or administrator to sell some or the whole of the personal estate at private sale, the court may so order."

Under the sanction of this statute, the superior court, pursuant to petition of the administratrix showing the consent of all the heirs, made an order authorizing and empowering her "to sell said stock of goods at private sale in such manner as may to her seem best and of her actions make due report to this court." This order goes no further than to authorize the disposal of the stock of goods. It does not authorize the continuance of the business to the extent of replenishing the stock of goods. In fact, the petition upon which it was based recited that the store had been running during the administration of the estate, "but that, owing to the continued depression in business, it has been impossible to realize anything in the way of profit from the business, and it is not thought by us advisable to continue said business." Notwithstanding this representation to the court, on which its order of private sale was procured, the administratrix continued to operate the business under the management of her son Donald Ennis, for nearly two years subsequent to the

date of the order.   During this period her son bought new
goods to place in the stock, for which he incurred the indebt-
edness of $3,824.82, now before us, for allowance or rejection

The administratrix claims that these purchases were made
without her knowledge or consent and neither the estate nor
herself is liable.  We hold, however, that Donald Ennis, as
manager of the store, was merely the agent of the adminis-
tratrix, and that she would be bound by his acts within the
apparent scope of his authority.  The evidence shows that the
administratrix was employed in the store at the time the goods
were coming in, and at least had an opportunity to know the
condition of the business.  Moreover, after admitted knowl-
edge of these claims, she did not repudiate them, but prom-
ised, through her attorney, that they should be paid.  Sub-
sequently she obtained an order of court permitting a reduc-
tion sale of the goods over the counter, and on this sale dis-
posed of the goods, payment for which she is now disputing.
She is clearly estopped to assert that she is not bound by the
acts of her agent which she charges were in excess of his
authority.

In resisting the claims of appellants, counsel for the ad-
ministratrix maintains that she had no authority to carry on
the mercantile business even under the order of the court, in-
asmuch as no statute confers that power on the court.  There
are two lines of decision in this country upon that question,
one upholding the jurisdiction of probate and chancery
courts to authorize a personal representative or trustee to
continue a decedent's business, the other denying such power.
The general rule under which a personal representative is
denied the power of continuing a decedent's business has
some limitations, which are stated in 18 Cyc. 242, as follows:

"Good discretion, however, may require some latitude in
closing out the decedent's business, and this a probate court
will duly consider when passing upon the representative's ac-
counts.  The personal representative may be justified in
continuing the business of the decedent so far as is necessary

for the purpose of winding up the same and converting the assets into money or carrying out existing contracts of decedent. . . . The rule is also subject to some limitations where the executor is also the residuary legatee or the business has been specifically bequeathed to him. And it has been held that the consent of all persons interested may authorize the personal representative to carry on the business of the decedent in good faith so as fairly to be allowed for all assets so consumed."

In *Gordon-Tiger Mining & Reduction Co. v. Loomer*, 50 Colo. 409, 115 Pac. 717, a case where an administrator carried on a second-hand store for over four years, the court said:

"Generally speaking, an administrator may not continue the business of the decedent, nor use the assets of the estate for business purposes. To this rule, however, there are exceptions; as where the decedent was engaged in the mercantile or manufacturing business, his representative may, under order of court, carry on the business for a sufficient time to close it up. The administrator, if properly authorized, could continue the business for the purpose of disposing of the stock to advantage, and might purchase necessary merchandise to make the property more salable. Such purchases would constitute a proper claim of the second class [expenses of administration] in the settlement of the estate. A person from whom he bought goods could present the claim to the court for allowance, and the statute of non-claims, from the very nature of the transaction, would not apply."

*Fleming v. Kelly, Maus & Co.*, 18 Colo. App. 23, 69 Pac. 272, was a case in which an administratrix, under order of the court, carried on the business of carriage manufacture for three years after the decedent's death, purchasing goods to be used in the business, payment for which was resisted by a subsequent administrator. The court said:

"From the necessities of the case, neither the legislature nor the constitutional convention could anticipate every business contingency which might arise in the settlement of an estate, and provide by statute specifically the powers to be exercised by the court in every instance. Primarily, its duty

is to see that the assets of the estate are collected and if debts
exist converted into money as speedily as possible, consistent
with the exercise of proper business discretion so as to pre-
vent a sacrifice, in order that the claims of creditors may be
satisfied, and the remainder, if any, be distributed among the
heirs at law. It logically and reasonably follows that in
furtherance of this general power, the court must have also
such powers as may be incidental to it, and necessary to carry
it out and effectuate its purpose. . . . Among such inci-
dental powers must of necessity be included, in a proper case,
the power to order the continuance of the business by the ad-
ministrator, temporarily at least, so as to dispose of the
stock on hand to the best advantage. The power may be
especially necessary and required in case of a manufactory,
where it has on hand a large amount of raw material and
partly manufactured articles, a sale of which in their then
condition would be impossible without a sacrifice. It follows
also that in order to carry out the power in such case that it
may be absolutely necessary to purchase some other material,
and where such purchase is made under such circumstances,
we cannot see how it can be other than an expense incurred in
the settlement of the estate."

In line with the foregoing authorities, see, also: *State v.
Jones*, 89 Mo. 470, 1 S. W. 355; *Starling v. Wyatt* (Miss.),
27 South. 526; *In re Hodges*, 1 Irish Rep. (1899) 480; *In re
Osburn's Estate*, 36 Ore. 8, 58 Pac. 521.

We think the rule that accords to probate courts discretion
to authorize the temporary continuance of a decedent's busi-
ness by his personal representative is a salutary one, and
that, under Rem. Code, § 1497, our courts have power to
make an order of that nature which would authorize payment
of costs of sale as a part of the expenses of administration.
But, as held in some of the cases cited *supra*, an order of sale
would not justify the purchase of additional merchandise to
the extent of keeping the stock intact, or more than is nec-
essary to enable the administrator to sell the remaining stock
to the best advantage.

With reference to the rights of the trade creditors, those
who have furnished the business with merchandise in viola-

tion of the rule as above stated, while there is a disagreement among the authorities, we think the better rule is that they are restricted to that part of the estate assets which were embarked in the business to which such creditors contributed, unless their rights against the general assets may have been enlarged by some principle of estoppel depriving the heirs and general creditors of the right to assert their prior claims against the general assets. The rule is succinctly stated in *Frey v. Eisenhardt*, 116 Mich. 160, 74 N. W. 501, as follows:

"We understand the rule is that where an administrator or executor, instead of closing out a business, continues it, even when authorized by will to do so, the trade debts will reach only the trade assets; that is, the property that was employed in the business or that was the result of doing the business. *Laible v. Ferry*, 32 N. J. Eq. 791. See, also, *Altheimer v. Hunter*, 56 Ark. 159; *Lucht v. Behrens*, 28 Ohio St. 231."

In *Altheimer v. Hunter*, 56 Ark. 159, 19 S. W. 496, it is said:

"The order of the probate court directing the administrator to continue the mercantile business of the intestate created no greater power in the administrator than if it had been made upon directions to that effect to an executor by the terms of a will. But in the latter case the authorities are uniform to the effect that neither the executor nor his trade creditors can resort to the general assets of the estate for the purpose of reimbursement or payment unless it is clear that the testator intended to make them liable for the debts contracted by the executor. In such a case advances are made to the administrator, and credit extended by those who give him credit, upon the faith of the assets embarked in the trade or business, and their remedies are confined to such assets. 2 Woerner, Administration, § 328, p. 689, n. 5; *Jones v. Walker*, 103 U. S. 444; *Ex parte Garland*, 10 Ves. Jr., 110; *Laible v. Ferry*, 32 N. J. Eq. 791."

The authority to carry on business under order of the court is governed by the same principles which apply in case of

conducting a business under testamentary powers. The rule in the latter case is thus stated in 18 Cyc. 244:

"Where the representative is authorized to carry on the decedent's business after his death, only such assets of the estate as are invested in the business at the time of the decedent's death can be considered as trade assets, and in the absence of some clear authority in the will the other property of the estate cannot be subjected to the risks of trade, or be made liable for debts contracted by the representative in carrying on the business."

In further support of the foregoing rule see: *Willis v. Sharp,* 113 N. Y. 586, 21 N. E. 705, 4 L. R. A. 493; *In re Sharp,* 5 Dem. (N. Y.) 516; *Furst v. Armstrong,* 202 Pa. St. 348, 51 Atl. 996, 90 Am. St. 653; *Davis v. Christian,* 15 Gratt. (Va.) 11; *Smith v. Ayer,* 101 U. S. 320.

The principle of estoppel is invoked in this case by the trade creditors for the purpose of subjecting the general assets of the estate, otherwise beyond their reach, to the lien of their claims. The weight of authority undoubtedly is that the consent of the adult heirs that the administrator may carry on the business conducted by the decedent will estop them from enforcing any personal liability against the administrator for losses incurred by him in such business. *Swaine v. Hemphill,* 165 Mich. 561, 131 N. W. 68, 40 L. R. A. (N. S.) 201.

This rule is also extended to general creditors who, as beneficiaries of the estate, expressly consent that the administrator may carry on such business. It will be seen, however, that this rule does not aid the trade creditors, who stand on a different footing from that of the heirs and the creditors of the decedent, in that they never had an interest in the general assets. It is otherwise, however, in regard to the assets embarked in trade. Where the heirs and general creditors consent that that portion of the estate may be carried on as a business venture, they are estopped to dispute the liability of the trade assets of the estate for debts incurred

therein by the administrator. We think, to this extent only are the trade creditors entitled to take advantage of the principle of estoppel.

The evidence shows that all the heirs and the widow of the intestate agreed among themselves that Donald Ennis should conduct the business carried on by A. C. Ennis in his lifetime, and this private arrangement was followed for a year before bringing it to the attention of the probate court. Finally, resort was had to the court for authority to the administratrix to sell the stock of goods "in such manner as may seem to her for the best interests of the estate." The petition to the court was signed by the administratrix and all the heirs. Donald Ennis was continued in charge of the business under this order until his final sickness and death nearly two years later. During this time, while acting under the order of the court as granted to the administratrix, the indebtedness for new goods here in question was incurred. The administratrix and the heirs claim that they had not authorized the purchase of fresh stock and did not know it was done, but we think their participation in the affairs of the estate was sufficient to charge them with notice, whether they had actual notice or not. The general creditors, Hayes & Hayes, Bankers, never expressly consented to the course of conduct here outlined, but, as the holder of a substantial claim, it must have been cognizant that this business was being conducted as a going business, and its failure to take any action to assert its rights estops it from now claiming as against the trade creditors.

But while the fact that the business was carried on with the consent of the heirs and the administratrix was sufficient to estop them from disputing the prior rights of the appellants in the trade assets, it does not estop them from denying liability as to the general assets. Trade creditors have no right to be placed on an equality with those existing at the date of decedent's death and who are entitled to share in the estate as it then existed. They contract with the personal

representative, chargeable with notice as to any limitation on his powers to bind the estate. They are not in any sense creditors of the decedent. They deal with the administrator on his personal credit and on the credit of the business conducted by him. The primary idea of administration is to preserve the estate for the benefit of those interested in it at the time of the owner's death, and courts should be slow to adopt a rule involving a departure from that idea. The intent of the law originally in permitting a personal representative to conduct a going business was that he should wind it up without unnecessary sacrifices. But it has become quite common for administrators to continue a business as if it was to be maintained intact as a going concern. Such a course is unwarranted, either by the statute or by general law.

The net proceeds arising from the business conducted by the administratrix were, as alleged in her petition, $879, and as found by the court, $650.85. Whatever the amount may be, it was derived in part from the sale of goods bought from the appellants, and they are entitled to have such proceeds applied on their claims. Their claims are allowed to that extent.

The rule here announced must be understood as going no farther than the issue presented upon the allowance or rejection of the claims. Whatever rights the appellants may have against the administratrix, while raised in the briefs of counsel, are not properly before us for consideration, and hence will not be passed upon at this time.

The judgment of the superior court will be reversed, with directions to allow the claims of appellants as preferred claims against moneys in the hands of the administratrix derived from the sale of the stock of merchandise.

ELLIS, C. J., MOUNT, HOLCOMB, and PARKER, JJ., concur.