## In re JUEN'S ESTATE.

County Judge's Court, Palm Beach County.
April 23, 1953.

Brunstetter & Netter, Miami, for the claimant.

Farish & Farish, West Palm Beach, for the estate.

Gedney, Johnston & Lilienthal, West Palm Beach, for the residuary legatee.

RICHARD P. ROBBINS, County Judge.

This cause came on before me on the motion of Graybar Electric Co. Inc. to have its claim for merchandise sold to the co-executors recognized as an obligation of the estate of Emil C. Juen, deceased, and chargeable against the general assets thereof, as an administrative expense.

Juen died on October 11, 1952 and at the time of his death was the owner and operator of a mercantile establishment known as the Crosley Store. He died testate nominating his niece Lina T. Microutsicos and his friend Roy H. Ifill as the executors of his last will and testament with full power to grant, bargain, sell and convey his estate without approval of the court, directing that they not be required to give bond.

These nominees qualified as such executors and were issued letters testamentary on October 13, 1952. Simultaneously with the entry of the order and issuance of letters testamentary they filed a petition for the continuance of the business of the Crosley Store on the ground that a large quantity of merchandise had been sold on credit, payable over an extended period of time, and that the merchandise of the business was of such kind and character that in order to compete with competitors it was necessary to sell the same on credit payable in monthly or weekly installments, and that to gain the most out of the accounts receivable and dispose of the merchandise on hand it was for the best interest of the estate that the business be continued. Pursuant to the provisions of section 733.08, Florida Statutes 1951, the court thereupon entered an order granting the petition on condition that the executors post a surety bond in the amount of $10,000 conditioned to truly and faithfully perform any and all the duties as such executors, both in administering the estate and continuing the business of the decedent.

Graybar Electric Co. Inc. sold appliances to Juen doing business as the Crosley Store prior to his decease in the amount of $2,522.25 and an unsecured claim against the estate in that amount has been filed. After Juen's death and after the entry of the order authorizing the executors to continue the business as aforesaid, Graybar Electric Co. Inc. sold appliances to Lina T. Microutsicos and Roy H. Ifill, co-executors, in the amount of $8,063.74.

It is this latter amount which the creditor wishes to have recognized as a valid claim against the general assets of the estate. It is contended that a liability such as this incurred under an order of the court is an expense arising in the settlement of the estate, that there is no question but that the executors had authority to purchase these materials under the order of the court. It should be noted, however, that the purpose of continuing the business as presented in the executors' petition was to dispose of the stock on hand by selling the same on the installment plan and so enable them to gain the most from the accounts receivable. The authority contained in the order of the court is in the language of the statute. I cannot, therefore, agree with claimant's position.

Continuing the business when legally authorized under order of the court is largely governed by the same principles as apply when doing so under testamentary power,[1] and in the absence of some clear authority in the will the estate cannot be subjected to the risks of trade, or become liable for debts contracted by the representative in carrying on the business,[2] so, while the executors were authorized to continue to operate the business under the order of the court they could not bind the assets of the estate for goods purchased. Such an order amounts only to a power equal to that contained in the will,[3] and persons dealing with the executors exercising their power of disposition of the personal assets of the estate in their hands are held to a knowledge of all the limitations which the will, as well as the law, put upon this power.[4] Juen's will does not confer upon the executors the power to continue his merchandise business. The executors were not bound to carry on the trade or business of the deceased although they were empowered by

---

1.  2 Woerner, American Law of Administration, 3rd Ed., § 328, p. 1050.
2.  Smith v. Ayer, 101 U.S. 320, 25 L. Ed. 955; Willis v. Sharpe (N.Y.), 21 N.E. 705; In re Ennis Estate (Wash.), 165 Pac. 119.
3.  Altheimer v. Hunter (Ark.), 18 S. W. 496.
4.  Smith v. Ayer, 101 U. S. 320, 25 L. Ed. 955.

statute and the order of the court to do so, and since they elected to carry it on under such authority they incurred the hazards incident thereto, the contracts of the executors are their personal contracts although contracted by them as executors, and bind them individually and not the estate they represent.[1]

Claimant cites Fleming v. Kelly (Colo. App.), 69 Pac. 272, as authority to sustain the position that a liability such as this, incurred by the express order of the court is an expense arising in the settlement of the estate, and may be presented by the posthumous creditor for payment from the general assets of the estate—but the case is not full authority to that effect.[2] In Smith v. Ayer, 101 U.S. 32, 25 L. Ed. 955, Mr. Justice Story held that nothing but the most clear and unambiguous language, demonstrating in the most positive manner that the testator intended to make his general assets liable for all debts contracted in the continued trade, would justify the court in arriving at such a conclusion.

Notwithstanding that the executors were authorized by statute and the order of the court to carry on the business, only such assets of the estate as were invested in the business at the time of the decedent's death can be considered as trade assets and be made liable for debts contracted by the executors.[3] The statute itself provides that only the net profits of the business shall be assets of the estate.[4]

Whether or not the executors are entitled to be indemnified from the assets of the estate for losses incurred in the operation of the business depends upon their conduct in its operation. If they were not guilty of misconduct or gross negligence they may be equitably entitled to indemnity. They are, nevertheless, primarily liable to the creditor who will not be entitled to subrogation if the executors are in default to the estate,[5] and there is nothing liable in equity to the claim of this posthumous creditor except the fund employed in the business at the time of the death of the testator.[6]

---

1. State Bank of Orlando v. Cummer Lumber Co. (Fla.), 141 So. 602.
2. 40 LRA (NS), note (b) at p. 223.
3. 2 Woerner, American Law of Administration, 3rd Ed., § 328, citing In re Ennis Estate (Wash.), 165 Pac. 119.
4. § 733.08, Florida Statutes 1951.
5. 33 C. J. S., p. 1177.
6. Fridenburg v. Wilson, 20 Fla. 359 at p. 369.

For the reasons above stated the motions of Graybar Electric Co. Inc. and all other creditors similarly situated are hereby denied.

Nothing in this order shall be construed to relieve the executrix and administrator C.T.A. from filing objections to this and other claims of a like nature, or to foreclose the residuary devisee or other creditors of the general estate from filing appropriate objections thereto.