[No. 33318.    Department One.    September 15, 1955.]

THE STATE OF WASHINGTON, *on the Relation of Theron A. Carlson, by his Guardian ad Litem Suzanne Uggen, Plaintiff,* v. THE SUPERIOR COURT FOR PIERCE COUNTY, *W. A. Richmond, Judge, Respondent.*[1]

'Reported in 287 P. (2d) 1012.

*Wright & Wright,* for relator.

*Morrissey, Hedrick & Dunham,* for respondent.

DONWORTH, J.—This case brings before us for decision the question whether the superior court exceeded its jurisdiction in revoking letters of administration issued to the administrator of an estate and appointing another administrator in his stead.

A chronological sequence of the proceedings in this matter is as follows:

November 29, 1954—Alvin J. Carlson (herein called the decedent) died, being a resident of Pierce county.

January 14, 1955—Suzanne Uggen, a former wife of decedent, and mother of decedent's fourteen-year-old son, filed a petition as a creditor of the estate, praying that Valen H. Honeywell, a practicing attorney of Pierce county, be appointed administrator of the estate.

January 26, 1955—Hearing duly held on this petition, and order entered appointing Mr. Honeywell administrator. He qualified, and letters of administration were issued to him. He mailed notice of his appointment to Mary Ruth Carlson, the surviving widow, and to decedent's minor son (whose mother is Suzanne Uggen).

January 31, 1955—First notice to creditors was published by Mr. Honeywell. Publication was completed on February 14, 1955.

February 14, 1955—Mrs. Uggen filed a creditor's claim stating an indebtedness owing by the deceased, as follows:

> "The sum of $50.00 per month for the past six (6) years, as per judgment for support of child of the deceased as shown by Cause No. 346725 of the Superior Court of King County, Washington, duly entered by Judge Calvin S. Hall on the 13th day of September 1944;
> AND                                                      $3,600.00
> "The further sum of $50.00 per month during the minority of said child, the child's name being Theron Alvin Carlson
>
> ———————
> $3,600.00"

February 16, 1955—Mary R. Carlson, surviving widow of decedent, filed a petition praying for the revocation of the letters of administration previously issued to Mr. Honeywell, and that the petitioner be appointed as administratrix. The principal ground for changing administrators was stated as follows:

"V. That all of the property in the estate of the said Alvin J. Carlson is the community property of the decedent and this petitioner. That the principal asset of the estate consists of an equity in real estate located on the shores of Lake Ohop, Pierce County, State of Washington, on which property the decedent and your petitioner have created certain improvements to be used in the business of a trout fishing resort and boat livery. That the decedent and your petitioner have made their home upon said real estate, and for several years immediately last past your petitioner, Mary R. Carlson, has operated and conducted the business of said resort and boat livery by herself due to the fact that the decedent was also engaged in a logging business. That it has been and now is the intention of your petitioner to continue to conduct said business if permitted to do so by the Court, believing that it would be to the best interests of the estate and that by doing so, the properties of the estate can be best conserved."

Pursuant to this petition, the court ordered that a citation be issued to Mr. Honeywell requiring him to appear on February 25th, to show cause why he should not be removed as administrator and Mrs. Carlson appointed in his stead.

February 18, 1955—Mr. Honeywell filed a petition alleging that Mrs. Carlson had certain real and personal property belonging to the estate in her possession and control, and praying that a citation issue to her requiring her to appear at the offices of his attorneys in Seattle for examination under oath as to her possession and control of assets of the estate. A citation was accordingly issued requiring Mrs. Carlson to appear there on February 23rd.

February 25, 1955—Hearing held in superior court on Mrs. Carlson's petition.

March 23, 1955—Memorandum decision filed by the court, reading as follows:

"The court has read the memorandum of authorities submitted, and the briefs of respective counsel, and finds as follows:

"First, to render a decision in this case is most distasteful to the court for the reason that this court has a very high regard for the abilities and sincerity of purpose of Mr. Valen Honeywell, but this cause, as all causes, stands upon its own facts.

"The facts in this case are that for a number of years petitioner, Mrs. Mary R. Carlson, the surviving spouse of Alvin J. Carlson, has been operating a fishing resort, the principal asset in this estate, up on Ohop Lake in Pierce County. She and her deceased husband had great financial difficulties, and both worked hard. They built up the business of renting boats, which is seasonal for about six months a year. Personal acquaintance and contact with fishermen and sportsmen is a great asset in such a business, and Mrs. Mary Carlson has their good will and, I dare say, their sympathy. It is understandable that her acquaintances would patronize her fishing resort, if for no other reason than to help her out, but that they would not do so to help a total stranger. Certainly the administrator, Mr. Honeywell, would keep the business going, but would be required to appoint an operator or manager, and this court is convinced that one could not find a more suitable person than the petitioner herein, Mrs. Mary Carlson.

"The court believes that the widow stands in law as a stranger. However, if this court has discretionary powers, and it appears to have, then for the good of the estate the widow should be appointed administratrix for she will put in the long hours—up to sixteen hours a day—necessary to operate the business. The court holds that the petitioner's own neglect did not render her incompetent to administer.

"Mr. Honeywell is a suitable and competent lawyer, but as administrator must employ two people to do one person's job. While most of the business is done weekends, it does require sixteen hours a day, seven days a week. In view of the fact that the purpose of the law is to conserve and preserve the assets of an estate, I therefore conclude that Mr. Honeywell is not a suitable and competent person to run the business, and I am certain that he would not attempt to do so, but would be compelled to employ strangers.

"For the reasons given above, and on account of the court's intimate acquaintance with decedent's business, and disregarding the court's personal friendship with Valen Honeywell, the court does appoint the widow, Mary R.

Carlson, as administratrix of her deceased husband's estate. "It is so ordered."

April 18, 1955—Order removing Mr. Honeywell and appointing Mrs. Carlson entered.

April 18, 1955—Suzanne Uggen appointed guardian *ad litem* for her minor son for the purpose of applying to this court for a writ of certiorari to obtain a review of the foregoing proceedings.

The writ was applied for and granted, and the propriety of the court's order of April 18, 1955, changing administrators is now before us for review.

Relator's principal contention is that, since Mary R. Carlson, the surviving widow, did not assert her statutory preferential claim for appointment as administratrix within forty days after the death, she has no standing to contest the appointment of another person except upon a showing that he is not suitable or competent. Consequently, it is argued that, there being no such showing regarding Mr. Honeywell's qualifications, the original order appointing should not be disturbed. *In re Sutton's Estate,* 31 Wash. 340, 71 Pac. 1012, is cited in support of relator's position.

That case was decided many years before the legislature enacted the probate code of 1917. This statute contains two sections dealing with the power of the superior court to revoke letters of administration (RCW 11.28.160 and RCW 11.28.250). The latter section is limited to instances of waste, embezzlement, mismanagement, and other similar acts by an administrator, and has no application to the facts of this case.

RCW 11.28.160 reads as follows:

"The court appointing any executor or administrator may, *for any cause deemed sufficient,* cancel and annul such letters and appoint other executors or administrators in the place of those removed." (Italics ours.)

Under this section, the trial court has a very wide discretion as to the grounds which it may hold to be sufficient cause for the removal of an administrator. Ordinarily, this court should not interfere with the determination of the trial court in such a matter.

The reason given by the trial judge in this case for changing administrators is that the widow can operate the fishing resort on Ohop lake more efficiently and more economically than Mr. Honeywell, who would have to employ a manager for that purpose.

■ We think that this reason is not legally sufficient, because prior to June 8, 1955, when chapter 98 of the Laws of 1955 became effective, the court had no authority to authorize an administrator to continue the operation of a decedent's business. When the order under review was entered on April 18, 1955, the sole function of administrator was to collect the debts due the decedent, take possession of the assets, pay creditors' claims pursuant to court order, pay death taxes and expenses of administration, and finally distribute the balance of the estate to the heirs in accordance with the probate court's decree of distribution.

In Atkinson on Wills (2d ed.) 661, § 121, is found the following statement:

"Statutes are frequently found which permit the representative to carry on a business with leave of court. In absence of such legislation, it is doubtful if court authority is sufficient to justify the losses of the business being charged to the estate. Clearly judicial leave to carry on the business for a specified time cannot warrant the operation for a longer period.

"A representative is often authorized to carry on the business with the consent of the interested parties. However, if some of the beneficiaries of the estate are minors, their rights cannot be prejudiced though the others consent. Furthermore, the consent of creditors is often difficult to obtain, and in absence of their consent, their interests cannot be impaired."

Cited in support of this text is our decision in In re Ennis' Estate, 96 Wash. 352, 165 Pac. 119, which is pertinent to the problem before us. In that case, the administratrix, with the consent of all the heirs, permitted the son for nearly two years to carry on the mercantile business formerly operated by the decedent. The operation by the son was a failure, and the contest in the case was between the creditors of this operation and the administratrix, who claimed that

she had no legal authority to continue operation of the business (through the son or otherwise). This court held that, as to trade creditors, she was estopped to assert this defense. However, in considering her contention, we said:

"In resisting the claims of appellants, counsel for the administratrix maintains that she had no authority to carry on the mercantile business even under the order of the court, inasmuch as no statute confers that power on the court. There are two lines of decision in this country upon that question, one upholding the jurisdiction of probate and chancery courts to authorize a personal representative or trustee to continue a decedent's business, the other denying such power. The general rule under which a personal representative is denied the power of continuing a decedent's business has some limitations, which are stated in 18 Cyc. 242, as follows:

" 'Good discretion, however, may require some latitude in closing out the decedent's business, and this a probate court will duly consider when passing upon the representative's accounts. The personal representative may be justified in continuing the business of the decedent *so far as is necessary for the purpose of winding up the same and converting the assets into money* or carrying out existing contracts of decedent. . . . The rule is also subject to some limitations where the executor is also the residuary legatee or the business has been specifically bequeathed to him. *And it has been held that the consent of all persons interested* may authorize the personal representative to carry on the business of the decedent in good faith so as fairly to be allowed for all assets so consumed.' " (Italics ours.)

As to the principal purpose of an administration of the estate of an intestate, we further said:

"The primary idea of administration is to preserve the estate for the benefit of those interested in it at the time of the owner's death, and courts should be slow to adopt a rule involving a departure from that idea. The intent of the law originally in permitting a personal representative to conduct a going business was that he should wind it up without unnecessary sacrifices. But it has become quite common for administrators to continue a business as if it was to be maintained intact as a going concern. *Such a course is unwarranted, either by the statute or by general law.*" (Italics ours.)

Applying the principles of law discussed above to the facts before the trial court when it heard and granted the prayer of Mrs. Carlson's petition, we find that (a) there was no statutory authority for authorizing *either* administrator to conduct decedent's fishing resort business at Ohop lake during the period of administration, and (b) there was no court order authorizing or purporting to authorize such action by the administrator, nor was there any showing that such operation was *temporarily* necessary to preserve any asset of the estate or for the purpose of selling the business as a going concern or otherwise, and (c) there was no consent by, or on behalf of, relator, a minor, to such operation.

■ Therefore, the reason given by the trial court in its memorandum decision, and its order of April 18, 1955, for the change of administrators is not legally sufficient and is based upon an incorrect legal premise, to wit, that the court had authority to permit an administrator to carry on decedent's business during the period of administration. The provision in RCW 11.28.160, authorizing the court to cancel letters of administration "for any cause deemed sufficient" does not include a cause (such as we have in this case) which is based on an illegal premise. The phrase means a legally sufficient cause.

The order of April 18, 1955, is reversed and set aside, with directions to reinstate Mr. Honeywell as administrator and proceed with the administration of the estate in accordance with the views herein expressed. We do not intimate any opinion as to the effect of the enactment of chapter 98, Laws of 1955, upon the future course of the administration of this estate.

It is so ordered.

HAMLEY, C. J., SCHWELLENBACH, and OTT, JJ., concur.

FINLEY, J. (dissenting)—Upon application of the surviving wife, filed more than forty days after the death of the intestate, the trial court removed the administrator (who had been appointed theretofore pursuant to application of the divorced wife of the decedent) and appointed the surviving wife. The court stated that the action was taken

because of his conviction that the surviving wife would more diligently, and could more effectively and efficiently, operate the lake fishing resort (which was the principal asset of the estate), because she had worked hard, long hours with the decedent in operating the resort, and knew the business and the patrons of the resort.

The majority quotes and refers to RCW 11.28.160, which reads:

"The court appointing any executor or administrator may, *for any cause deemed sufficient,* cancel and annul such letters and appoint other executors or administrators in the place of those removed." (Italics mine.)

It is then pointed out that chapter 98 of Laws of 1955 (which authorizes an administrator to continue the operation of a decedent's business) did not become effective until June 8, 1955; that, theretofore, no statutory authority existed to permit the continued operation of a decedent's business by an administrator. The conclusion is reached that the reason given by the court for the appointment of the second administrator is not *legally sufficient.* The latter appointment is set aside, with instructions to reinstate the first administrator.

I cannot agree with the reasoning of the majority, or with the result reached. First, the majority interprets the action or the order of the trial court in an unnecessarily extreme and, I think, unjustified manner in saying, in effect, that the trial court has authorized the administrator to continue the operation of the decedent's business *ad infinitum.* It is considerably more reasonable that the trial court was being quite practical about the matter and authorized the continuation of the business as an entity, or as a going concern, so that the business could be protected, and its value preserved as such, merely for *the purpose of sale* as a profitable, desirable going concern. Actually, the order of the trial court states that Mrs. Carlson's appointment was made "for the good of the estate."

Secondly, assuming solely for the purpose of argument that the majority's view is correct as to the meaning and purpose of the order of the trial court, it may be pointed out

that chapter 98, Laws of 1955, passed the state house of representatives on February 8, 1955, the state senate on March 2, 1955, and was signed by the governor on March 8, 1955. The argument is certainly not without merit that the trial court was aware of the statutory enactment, and that, as of June 8, 1955, the administrator could be authorized, lawfully, to continue the operation of the decedent's business, and that the trial court intended that, in the interim, the business should be operated as a going concern so as to preserve its maximum value as an asset of the estate for the protection of all persons claiming an interest therein. RCW 11.28.160 clearly authorizes the probate court to replace an administrator *for any cause deemed* sufficient. This certainly must mean for any cause deemed sufficient *by the probate judge*. I cannot conceive of any broader language which the legislature might have used in investing the probate court with practically *carte blanche* authority to remove and replace administrators.

I think further discussion is unnecessary, and that RCW 11.28.160 authorized the entry of the order herein involved; that the order was proper for the reasons stated hereinbefore, and that the trial court should be affirmed. However, the majority as mentioned above, emphasizes the fact (a) that chapter 98, *supra,* did not become effective until June 8, 1955, which date was several months after the entry of the order herein involved, and (b) that, at the entry date of the order, the court could not authorize an administrator to continue the operation of a decedent's business. It is unquestionably true that chapter 98, *supra,* is now in effect and that the trial court at the present date would have the necessary statutory authority to enter an order authorizing an administrator to continue the operation of a decedent's business. Our final disposition of this appeal necessarily will occur sometime after the effective date of chapter 98, *supra.* Should the supreme court then say that no statutory authority existed to support the order when it was entered; that, although statutory authority now exists to support the order, it is now presently illegal? I do not think so.

It seems to me, furthermore, that we should recognize the practicalities of the situation; namely, that the court could follow the directions proposed in the majority opinion, reinstate Mr. Honeywell (the first administrator), but immediately enter another order replacing him by the appointment of Mrs. Carlson (the surviving wife of the decedent) as administratrix. This latter action clearly would be authorized under chapter 98, Laws of 1955, even as the trial court's order is construed in the majority opinion.

I would affirm the order of the probate court.