[No. 3148–II.   Division Two.   February 6, 1980.]

*In the Matter of the Estates of* MELVIN T. AABERG, ET AL.

*Michael R. Tabler,* for appellant.

*Samuel H. Pemberton, Jr.,* for respondent.

REED, C.J.—Executor William J. Walton and attorney C. M. Clark appeal from a lower court order removing them as executor and attorney representing the estates of Melvin and Christina Aaberg, and ordering the repayment of part or all of the fees paid to them by the estate. We affirm in part and reverse in part.

The principal issues presented in this appeal are: (1) whether there is sufficient evidence of the executor's mismanagement to uphold the lower court's finding; and (2) whether the lower court erred in requiring the executor and attorney to refund part or all of the fees received.

Late in February 1974, both Melvin and Christina Aaberg died, leaving real and personal property to Mrs. Aaberg's eight children. One of her sons, William J. Walton,

was appointed executor for both estates. The property was to be distributed among the children "share and share alike," and the executor was to have nonintervention powers.

Shortly after the funeral of their parents the legatees gathered at a meeting to agree upon a procedure for dividing the estates' personal property.[1] Elizabeth Carlton, a legatee, claims she submitted to the others a list of her personal items stored at their parents' home. Mrs. Carlton wished to have these items set aside for her before the remaining personal property was distributed. All agreed she could have the items requested. As the meeting continued, Mrs. Carlton became angry for unknown reasons and left before any agreement could be reached on a distribution scheme. The remaining legatees agreed to divide the household goods by lot and following the distribution they removed the goods from the house. The executor kept no records of the property distributed, its value, or to whom it was distributed. Although the items mentioned on Mrs. Carlton's list were left for her in the house, it was some time before she was able to remove them from the premises.

In August of 1977, Mrs. Carlton petitioned the Superior Court, under RCW 11.68.070, seeking revocation of the executor's letters testamentary or restriction of his nonintervention powers. Testimony elicited at the hearing indicated that pursuant to his duties under RCW 11.44.015, the executor inventoried properties in both estates. According to an appraisal dated April 18, 1974, the total value of both estates was $84,443.17. The inventory, however, failed to include a 1964 automobile which was later sold to another legatee for $125.[2] Furthermore, the household goods were appraised at only $580, and the executor was unable to

---

[1] Although one legatee had not been contacted and was not present at the meeting, we attach no significance to his absence in light of his apparent acquiescence to the distribution made.

[2] Proceeds from the sale were applied to administration expenses.

recall whether the inventory was made before or after the other legatees had removed the distributed goods.

After completion of the testimony the lower court approved the executor's removal. Before appointing a successor, the court ordered Mr. Walton to refund the entire $2,500 fee he had collected for his prior services as executor and ordered the estates' attorney to refund $1,000 of his $1,500 attorney's fees. Thereafter, a successor was appointed with nonintervention powers to continue the administration of the estates.

The first issue in the former executor's appeal is whether the lower court had adequate grounds to revoke his letters testamentary. RCW 11.68.070 provides, *inter alia*, that should the executor become subject to removal for any reason specified in RCW 11.28.250, the court may, within its discretion, remove the executor and appoint a successor. RCW 11.28.250 authorizes the court to revoke the executor's letters where it has reason to believe the personal representative has wasted, embezzled, or mismanaged property of the estate, or where for other cause or reason the court finds such action is necessary. Although the trial judge is given broad discretion as to the grounds upon which he may remove an executor, the grounds must be valid and supported by the record. *In re Estate of Beard,* 60 Wn.2d 127, 372 P.2d 530 (1962). If any one of a court's several grounds for removal is valid, its decision will not be disturbed on appeal. *In re Estate of Beard, supra. See In re Estate of Blodgett,* 67 Wn.2d 92, 406 P.2d 638 (1965); *In re Estate of Wolfe,* 186 Wash. 216, 57 P.2d 1066 (1936).

The trial court's findings in the case at bar indicate that the executor failed to submit a complete inventory, that money received and other estate property was not maintained or recorded properly, and that the distribution made was not according to the share and share alike provision of the decedents' wills. An independent review of the record reveals that these findings are based on evidence concerning the executor's failure to inventory the $125 automobile

and his failure to provide Mrs. Carlton with a full one-eighth share of their parents' household property.

On appeal, the executor cites *In re Estate of Hooper,* 76 Wash. 72, 135 P. 813 (1913), in urging that the inventory omission was a minor irregularity and not sufficient grounds for removal, especially in light of his specific reference to the automobile and the inventory omission in the inheritance tax report. Furthermore, the executor urges that his failure to provide Mrs. Carlton with her one-eighth share in the $580 of household furnishings is insignificant in light of the estates' final appraised value of over $74,000. At oral argument the executor suggested that the trial court acted excessively in removing him and denying all his fees. He maintains that, considering the alleged de minimis nature of the conduct involved, a more appropriate sanction would have been the restriction of his nonintervention powers.

Despite any disagreement we may have with the trial court's decision, our only query on appeal is whether that decision is so arbitrary as to amount to an abuse of discretion. *In re Estate of Blodgett, supra; State ex rel. Carlson v. Superior Ct.,* 47 Wn.2d 429, 287 P.2d 1012 (1955). Based on the executor's failure to provide Mrs. Carlton with her full share of the household goods and, judging from the record, the animosity existing between the executor and Mrs. Carlton, we cannot say that the court's ruling was so devoid of reason that it now should be overturned. *See In re Estate of Blodgett, supra.* Because the executor was unable to specify whether the inventory of household goods was taken before or after most of the goods were removed by the other legatees, we cannot say that the value of a one-eighth share is de minimis.

The second assignment of error concerns the court's ruling requiring the executor and attorney to refund fees they claim to have earned during administration of the two estates. The executor, William J. Walton, was ordered to repay all of the $2,500 fee he had collected, and the attorney, C. M. Clark, was ordered to repay $1,000 of the $1,500

he had collected. Both appeal the order claiming that the lower court lacked authority to order such a refund and even with proper authority the court did so without considering the reasonable value of services actually provided. Because we find the court lacked jurisdiction to consider the question of fees we do not address the need for a court evaluation of the reasonable value of services actually provided.

Analysis of the jurisdiction issue requires a brief summary of the respective roles of the court and personal representative in a nonintervention will. *See generally* Fletcher, *Washington's Nonintervention Executor—Starting Point for Probate Simplification,* 41 Wash. L. Rev. 33 (1966). The notion of a nonintervention will is one that allows the executor to deal with the estate's property without the need for court supervision. RCW 11.68 concerns the settlement of estates without court supervision, and the nonintervention statute, RCW 11.68.030, identifies the point at which the personal representative acquires the nonintervention powers.

Under RCW 11.68.030, upon entry of an order of solvency and the furnishing of any required bond the court loses jurisdiction. Quoting the language parallel in meaning to RCW 11.68.030, the court in *In re Estate of Megrath,* 142 Wash. 324, 326–27, 253 P. 455 (1927), said:

> "After the probate of any such will . . . all such estates may be managed and settled without the intervention of the court."

This is not a limitation, but rather a grant of power to the executor. If in his judgment matters arise in the settlement of the estate requiring judicial determination, he may invoke the jurisdiction of the superior court, either in equity or in probate. But this must be of his own volition. *The jurisdiction of the probate court can only be invoked by others in those cases where the statute has conferred the right.*

In *Schubach v. Redelsheimer,* 92 Wash. 124, 158 Pac. 739, after reviewing many of our earlier cases, this court said:

> ". . . *where the requirements of this statute have been complied with, the jurisdiction of the probate court ceases, except upon the happening of one or more of the conditions provided in the statute which authorizes an interference on the part of the court.*"

(Italics ours.)

The court in *In re Estate of Peabody*, 169 Wash. 65, 70, 13 P.2d 431 (1932), provided further insight to the existence of subject matter jurisdiction when it said:

> To make this clear, let us illustrate: (a) Mr. Peabody in his lifetime made a non–intervention will, but no court then had jurisdiction of his estate. (b) Mr. Peabody died. Still no court had jurisdiction of his estate until, after his death, by proper petition setting up the jurisdictional facts, filed in the superior court of the proper county, that court, by reason of that application to it, obtained jurisdiction of the estate. (c) When the order of solvency was properly entered, the further administration of the estate was by the statute relegated exclusively to the executors, and the probate court, which had before had jurisdiction, then lost its jurisdiction of the estate. (d) Thereafter, in order for the court to regain jurisdiction of the estate, its jurisdiction must be again invoked by a proper application made by someone authorized by the statute so to do, . . .

The court in *In re Estate of Coates*, 55 Wn.2d 250, 347 P.2d 875 (1959) relied on this illustration from *Peabody* in holding that the probate court lacked jurisdiction to reduce the fees of the executor and his attorney absent a claim and a finding based on substantial evidence of an intent to mulct the estate.[3]

Under the statutory scheme applicable at the time of *In re Estate of Megrath, supra,* and *In re Estate of Coates, supra,* upon proper petition a court could acquire jurisdiction over an executor who was recreant to his trust and, under the nonintervention statute, require administration like that required for other wills not falling under the nonintervention statute. In other words, the court would

---

[3]In the case at bar, there was neither the allegation nor any evidence offered that the executor intended to mulct the estate.

acquire and retain jurisdiction for the purpose of supervising the executor in his further administration of the estate. The nonintervention statute, however, has undergone recent modifications which we feel substantially alter the court's continuing jurisdiction over an executor's administration.

In 1974 the legislature modified RCW 11.68.030 and adopted RCW 11.68.070 which provided the following:

> [I]f, upon hearing of the petition it appears that said personal representative has not faithfully discharged said trust or is subject to removal for any reason specified in RCW 11.28.250 as now or hereafter amended, then, in the discretion of the court said personal representative may be removed and a successor appointed *with such powers as the court may determine, . . .*

(Italics ours.) Since then the statute has undergone one additional change, with its final form as follows:

> [I]f, upon hearing of the petition it appears that said personal representative has not faithfully discharged said trust or is subject to removal for any reason specified in RCW 11.28.250 as now or hereafter amended, then, in the discretion of the court the powers of the personal representative may be restricted or the personal representative *may be removed and a successor appointed.*

(Italics ours.) Attaching significance to these changes, *State v. Bell,* 8 Wn. App. 670, 508 P.2d 1398 (1973), we find a conscious effort on behalf of the legislature to restrict the court's involvement in the administration of a nonintervention will. The statute endows the lower court with authority to either restrict the executor's nonintervention powers and partially supervise administration of the estate, or completely remove the original executor and appoint a successor. Accordingly, our analysis of the court's jurisdiction convinces us that by appointing a successor the probate court loses its momentarily gained jurisdiction over the estate and cannot concern itself with approval of the previous executor's or attorney's fees. *See In re Estate of Coates, supra,* and *In re Estate of Peabody, supra.* Any later challenge to fees charged or claimed by the executor–

trustee for his services or those of his attorney would have to be lodged against him as such trustee and litigated in the proper forum, which is not the probate court.

In the case at bar, the trial court approved the executor's removal pursuant to its discretionary authority under RCW 11.68.070 and denied the executor's and attorney's fees under RCW 11.48.210.[4] Although RCW 11.68.070 incorporates the reasons for removal as specified in RCW 11.28-.250, the limited reference does not authorize the court's reliance on any other portion of RCW Title 11. As we have shown under the statutory scheme of RCW 11.68.070, the probate court's ephemeral jurisdiction ceases upon appointment of the successor. Once the trial court exercised its discretionary authority to remove the existing executor, the statutory authority empowered it only to appoint a successor.[5] Under this statutory procedure the wills' nonintervention status is preserved and allowance is made for

---

[4]RCW 11.48.210 provides:

"Compensation—Attorney's fee. If testator by will makes provision for the compensation of his personal representative, that shall be taken as his full compensation unless he files in the court a written instrument renouncing all claim for the compensation provided by the will before qualifying as personal representative. The personal representative, when no compensation is provided in the will, or when he renounces all claim to the compensation provided in the will, shall be allowed such compensation for his services as the court shall deem just and reasonable. Additional compensation may be allowed for his services as attorney and for other services not required of a personal representative. An attorney performing services for the estate at the instance of the personal representative shall have such compensation therefor out of the estate as the court shall deem just and reasonable. Such compensation may be allowed at the final account; but at any time during administration a personal representative or his attorney may apply to the court for an allowance upon the compensation of the personal representative and upon attorney's fees. If the court finds that the personal representative has failed to discharge his duties as such in any respect, it may deny him any compensation whatsoever or may reduce the compensation which would otherwise be allowed."

[5]As the result in this case indicates, we do not find it significant that the court adjusted the executor's and attorney's fees before appointing the successor. Within this limited time frame, the chronology of events is immaterial. Once the court's jurisdictional basis is established its authority is limited to removal of the executor and appointment of a successor, or restriction of the executor's nonintervention powers and prospective supervision of the estate's administration.

expeditious settlement of the estate without the need for unnecessary court supervision. Accordingly, the lower court's orders regarding fees of the executor, William Walton, and attorney, C. M. Clark, are reversed.

It is so ordered.

PETRIE and SOULE, JJ., concur.