[No. 8863-4-III.   Division Three.   December 6, 1988.]

*In the Matter of the Estate of*
WALTER HOOKOM.

GALE HOOKOM, *Appellant,* v. GERALD HOOKOM,
*Respondent.*

*Larry Gustafson* and *Gustafson & Reynolds,* for appellant.

*Stanley Kempner* and *Goss, Moe & Sampson,* for respondent.

THOMPSON, C.J.—Gale Hookom, as personal representative of his grandfather Walter Hookom's estate, appeals a

superior court order authorizing the sale of the estate's personal property[1] and the major portion of the estate's real property. The order was obtained from the probate court on the motion of Walter's son and Gale's father, Gerald Hookom. We reverse.

Walter and Alta Hookom were husband and wife. Alta died in the late 1970's. By her will, she gave her one–half interest in the community property to Walter for life; upon Walter's death, to their son, Gerald, for life; and upon Gerald's death, to Gerald's children. Alta also provided:

> Irrespective of the life estate provisions hereinabove provided, I hereby specifically authorize my husband to sell portions of the real property if he deems it necessary, in such amounts as may be required, in his discretion, to pay the existing mortgage indebtedness, and his signature on a Deed shall be sufficient to convey title of my interest in any real property so sold. . . .

> *In the event the mortgage indebtedness continues to exist after my husband's death, I herewith specifically authorize my son to sell such portion of the real property which may be necessary to remove the mortgage indebtedness,* and his Deed shall be sufficient to convey a complete title thereto. Any overplus of funds from such sale, not required for payment in full of the mortgage indebtedness shall be deposited by the purchasers of the land in a savings and loan association trust account with my son to receive the interest therefrom, the principal of the trust account to be distributed upon his death to his children, as provided in this numbered paragraph.

(Italics ours.)

In 1985, Walter died. His will designated his grandson Gale personal representative and directed that he serve without bond and "without intervention of any court, except to the extent required by law . . ." Gale is the sole beneficiary under Walter's will.

Gale filed Walter's will for probate on April 17, 1985. On

---

[1]The personal property consists of older model farm equipment of negligible value.

August 1, 1985, the probate court entered an order of solvency, and confirmed Gale as executor to act without court intervention. Two years later, on July 23, 1987, Gerald filed a motion asking the probate court to order the sale of certain estate property for $108,000. That amount represents the fair market value of the assets according to an appraisal obtained by Gerald and is equal to the offer made by the lessee of the estate's real property.

The appraisal divides the real property into four parcels and values each parcel separately:

| | |
|---|---:|
| Range land/Pasture land: | |
| 620 acres at $100/acre | $62,000.00 |
| Crop land: | |
| 144.4 acres at $300/acre | 43,320.00 |
| Grassland: | |
| 90 acres at $300/acre | 27,000.00 |
| Homesite and improvements | 19,000.00 |
| Total | $151,320.00 |

The lessee's offer was for all the parcels except the 144.4 acres of cropland.

In probate court, Gerald's attorney contended the sale was necessary "to facilitate the payment of expenses of the estate and maintenance of the estate assets". Counsel for Gale told the court: "[W]e do not feel that a sale is necessary. All the bills have been made since the institution of this probate. All bills have been met." The court found the estate was without sufficient liquid funds to pay creditors and maintain the property, and a sale was ordered to provide funds for these purposes.

The dispositive issue is whether the probate court had jurisdiction to order a sale of estate assets where it previously had entered an order directing administration without court intervention.

In Washington, a personal representative may administer the estate of a decedent without intervention by the court when certain conditions are met. RCW 11.68.020.[2]

> This is not a limitation, but rather a grant of power to the executor. *If in his judgment matters arise in the settlement of the estate requiring judicial determination, he may invoke the jurisdiction of the superior court,* either in equity or in probate. But this must be of his own volition. *The jurisdiction of the probate court can only be invoked by others in those cases where the statute has conferred the right.*

(Italics ours.) *In re Estate of Peabody,* 169 Wash. 65, 69, 13 P.2d 431 (1932). *See also In re Estates of Aaberg,* 25 Wn. App. 336, 341, 607 P.2d 1227 (1980) (quoting *In re Estate of Megrath,* 142 Wash. 324, 326–27, 253 P. 455, 256 P. 503 (1927)); and cases collected in Fletcher, *Washington's Non–Intervention Executor—Starting Point for Probate Simplification,* 41 Wash. L. Rev. 33, 62–74 (1966).

Gerald relies on *In re Estate of Eberle,* 4 Wn. App. 638, 643, 484 P.2d 478 (1971), which states: "[T]his loss of jurisdiction is a somewhat limited concept . . ." *See also Gwinn v. Church of the Nazarene, Kansas City, Mo.,* 66 Wn.2d 838, 405 P.2d 602 (1965). The quote from *Eberle* is a correct statement of the law. As *Peabody* points out, the probate court has jurisdiction in circumstances in which the personal representative or someone else with a statutory right invokes it. But Gerald must still show the existence of one of these circumstances.

Here, Gale raises the issue of jurisdiction for the first time on appeal. Gerald contends that Gale's failure to raise

---

[2]RCW 11.68.020 provides:

"Unless court supervision of an estate shall be specifically required under the terms and provisions of a will, a decedent shall be deemed to have intended any and all personal representatives named in his will to have the power to administer his estate without the intervention of court, and . . . [such] personal representative . . . shall acquire nonintervention powers without prior notice, upon meeting the requirements of RCW 11.68.010 . . ."

this issue earlier amounted to a waiver and was the equivalent of "invoking" the probate court's jurisdiction. We disagree. It was Gerald, not Gale, who filed the petition for an order of sale. Gale did nothing which would have indicated to the probate court that he wanted it to decide the issue presented in Gerald's petition. We fail to see how his conduct can be characterized as "invoking" the court's jurisdiction.[3]

The question, then, is whether Gerald had some statutory right to invoke the court's jurisdiction. He claims he had such a right under RCW 11.68.070, which provides for removal of the personal representative or the restriction of his powers in certain situations. That statute reads:

> *If any personal representative who has been granted nonintervention powers fails to execute his trust faithfully* or is subject to removal for any reason specified in RCW 11.28.250[4] . . . *upon petition of any unpaid creditor* of the estate who has filed a claim *or any heir, devisee, legatee,* . . . such petition being supported by affidavit which makes a prima facie showing of cause for removal or restriction of powers, *the court shall cite such personal representative to appear* before it, and if, upon

---

[3]The cases relied upon by Gerald in oral argument before this court are distinguishable. *See In re Estate of Stoops,* 118 Wash. 153, 203 P. 22 (1922); *In re Estate of Sigurdson,* 44 Wn. App. 731, 723 P.2d 26 (1986). Neither decision concerned the jurisdiction of the probate court in matters involving a nonintervention estate. In contrast, *Peabody, Aaberg,* and *Megrath* directly concern this issue. They are specific in their holdings that the probate court lacks jurisdiction over a nonintervention estate unless the personal representative or some other person with a statutory right invokes it. The term "invokes" connotes conduct other than mere submission to jurisdiction by the personal representative's presence in court without objection.

[4]RCW 11.28.250 states:

"Whenever the court has reason to believe that any personal representative has wasted, embezzled, or mismanaged, or is about to waste, or embezzle the property of the estate committed to his charge, or has committed, or is about to commit a fraud upon the estate, or is incompetent to act, or is permanently removed from the state, or has wrongfully neglected the estate, or has neglected to perform any acts as such personal representative, or for any other cause or reason which to the court appears necessary, it shall have power and authority, after notice and hearing to revoke such letters."

hearing of the petition it appears that said personal representative has not faithfully discharged said trust or is subject to removal for any reason specified in RCW 11.28.250 . . . then, *in the discretion of the court the powers of the personal representative may be restricted or the personal representative may be removed and a successor appointed.*

(Italics ours.)

■ Under this statute, the court may remove or restrict the powers of a nonintervention executor only if it is shown the executor has not faithfully discharged his trust, and, as a result, has damaged an interested party. *In re Estate of Hooper,* 76 Wash. 72, 81, 135 P. 813 (1913) (construing predecessor statute). In *Aaberg,* at 344, the court observed in footnote 5: "Once the court's jurisdictional basis is established its authority is limited to removal . . . and appointment of a successor, or restriction of the executor's nonintervention powers and prospective supervision of the estate's administration." *See also in re Estate of Livingston,* 7 Wn. App. 841, 502 P.2d 1247 (1972).

In *State ex rel. Jakobsen v. Superior Court,* 127 Wash. 583, 221 P. 608 (1923), the court held it was proper under the circumstances in that case for the probate court to assume jurisdiction under the predecessor statute to RCW 11.68.070. The residuary legatees had petitioned the court for an order directing the executor to appeal from a judgment allowing a claim against the estate. They alleged facts showing a probability that the judgment would be reversed on appeal, arbitrary and capricious conduct on the part of the executor, and that they were the only persons who had anything to gain or lose by the appeal. The court stated:

It is not a question here as to whether or not the superior court should direct the executor to appeal from the judgment establishing the claim . . . [rather, the question is] whether or not the superior court shall assume jurisdiction over the management and control of the estate to the extent of inquiring as to whether or not it is the duty of the executor to appeal from the judgment in the interest of the estate . . .

*Jakobsen,* at 587.

Here, Gerald's motion asked the probate court to order the sale of real property. He did not petition for removal of Gale or ask that his powers be restricted pursuant to RCW 11.68.070. Even if we look beyond the form of Gerald's pleading to its substance, Gerald's motion does not come within the statute. Nowhere did Gerald allege that Gale had not faithfully executed his trust. While he generally asserted that estate assets were not being maintained due to a lack of funds, the record does not indicate that Gale's acts as personal representative had any adverse effect on Gerald's life estate.[5] *Hooper.*

In summary, we hold the probate court was without jurisdiction to order the sale of the property of the estate. Gale Hookom had authority to administer the estate without court intervention, and the record does not establish that he invoked the jurisdiction of the probate court or that he had failed his trust, thereby allowing the court under RCW 11.68.070 to remove him or restrict his powers. We also deny Gerald's request for attorney fees under RCW 11.68.070.

A second issue is whether the court's order exceeded the authority granted Gerald in Alta's will. Alta authorized Gerald to sell only so much property as was "necessary" to remove the mortgage. Both parties agree the mortgage balance is approximately $5,000 and that Gale, acting in his previous capacity as Walter's guardian, obtained a $20,000 bank loan that remains unpaid. Gerald made no showing at the hearing that the only way he could retire the $25,000 debt was to sell $108,000 of the property.

"A power granted by a will to a life tenant to dispose of the property must be strictly construed, and it must be

---

[5]RCW 11.68.070 also provides that only a creditor, heir, devisee or legatee may petition for removal of the nonintervention personal representative. Gerald would have been an heir if Walter had died intestate, but Walter had a will which left everything to Gale. RCW 11.02.005(6) reads: "'Heirs' denotes those persons . . . who are entitled under the statutes of intestate succession to the real and personal property of a decedent on the decedent's death *intestate.*" (Italics ours.)

exercised in the manner and for the purpose stated in the will." 51 Am. Jur. 2d *Life Tenants and Remaindermen* § 81, at 314 (1970). While Alta's will may be said to have contemplated proceeds of a sale might be greater than the mortgage, it cannot fairly be said she intended such a sale would include substantially all the property with a value four times more than the debt. To hold otherwise requires this court to ignore the language in her will restricting the sale to that "portion" of the land "necessary" to pay the mortgage. *Cf. Saunders v. Callaway,* 42 Wn. App. 29, 33, 708 P.2d 652 (1985) (if possible, the testator's intent is to be ascertained from the language of the will itself). Consequently, we hold not only that the court did not have jurisdiction, but the order of sale of $108,000 of real property violated the terms of Alta's will.

Reversed.

GREEN and MUNSON, JJ., concur.