[No. 20651-3-III. Division Three. April 3, 2003.]

*In the Matter of the Estate of* MARCELLA LOUISE JONES.

JEFFREY P. JONES, ET AL., *Respondents*, v. RUSSELL K. JONES, *Appellant*.

*Philip A. Talmadge* (of *Talmadge & Stockmeyer, P.L.L.C.*), for appellant.

*Robert F. Greer II* (of *Feltman, Gebhardt, Greer & Zeimantz, P.S.*), for respondents.

SWEENEY, J. — The superior court has broad authority to oversee the administration of a probated estate, subject only to review for abuse of discretion. But a court does not have this broad discretion when the will confers nonintervention powers on the personal representative. To assert superior court jurisdiction over an estate once its nonintervention status is established, the court must find that the personal representative has mismanaged the estate or otherwise failed to faithfully execute his trust. RCW 11.68.070. Under the probate statutes in effect at the relevant times here, a nonintervention personal representative was *not* required to provide interim accountings to the estate beneficiaries. The court, nonetheless, removed the nonintervention personal representative for failing to provide an interim accounting and for other alleged mismanagement of the estate. We hold that the alleged misconduct here was insufficient as a matter of law to empower the court to intervene. And we therefore reverse.

## FACTS

Marcella Jones died testate in Spokane on September 2, 1995. She left a furnished home, stocks, money, and a 1987 Buick, with a total net value of $535,000. The will divided the estate equally among Ms. Jones's sons—David, Russell, Jeffrey, and Peter Jones. We will use first names in this opinion for clarity. Russell and his brother Peter have a long history of mutual animosity.

The will named Russell personal representative with nonintervention powers. Russell filed the will on September 25, 1995, and was appointed personal representative without opposition.

Russell had lived with his mother in the estate home since the mid-1980s and "conducts his law practice" from the home. Clerk's Papers (CP) at 97. That is, he did legal work there but did not maintain an office or see clients there. He continued to live in the home while administering the estate. Russell testified that he remained in the home to manage, protect, and insure it and its contents. Ms. Jones's insurance transferred to the personal representative but would lapse if the home were vacant for 30 days. Insurance on the structure, but not the contents, would continue if the home were rented.

Russell contends that his living in the home was a reasonable alternative that benefited the estate. Storing the large amount of household goods and hiring a house-sitter was not feasible because the estate property had to be available to the heirs under the care of a trustworthy caretaker. And the furnace broke in 1995, so the house was unrentable anyway.

In December 1995, Russell visited David and Peter in Seattle. David asked Russell to advance $5,000 each to David and Peter against their ultimate cash distribution. Russell complied. He did not have the estate checkbook with him, so he wrote two $5,000 checks on his own account. He later reimbursed himself $10,000 from the estate account. Peter alleged this was commingling of funds. But at trial he conceded it was not. Russell also wrote personal checks for funeral expenses and the probate filing fee, again reimbursing himself from the estate account. Peter again alleged commingling, but again later conceded it was not.

On May 4, 1996, the brothers met at the estate home to select personal property as part of their distribution. Russell presented each with a professional inventory and appraisal of everything of value. Peter asked for informa-

tion, specifically the total value of the estate, the terms of the will, and the terms of Russell's executorship. Russell refused to address anything other than the distribution of personal property. Peter became enraged because the family dining table had not been appraised. The dining table had been purchased secondhand when the boys were children. The appraiser found it to have no value. Russell called the police who escorted Peter from the house.

On May 9, 1996, Russell filed the estate inventory with the court as required by former RCW 11.44.015 (1967). The assessed value of the home was set at $120,900. The property inventory does not include any appraisal of personal property. Neither does it list bank accounts. But under the former statute, no property appraisal is called for. That requirement was added in 1997 for deaths occurring after the effective date of the amendment. Bank accounts were required to be listed in 1995. Former RCW 11.44.015(4).

In November 1998, Peter and Jeffrey petitioned the superior court for an order requiring an interim accounting and primary accounting documents from the ongoing estate administration. In a separate action, they alleged breach of fiduciary duty and sought removal of Russell as personal representative.

A court commissioner initially granted the petition for an accounting. This was revised by a judge. Peter and Jeffrey then specifically asked the court to:

- enjoin Russell from occupying the house or otherwise using estate property;
- reimburse the estate from Russell for 71 months of rent at $900 a month;
- reimburse the estate for utilities and taxes on the house paid by the estate for the years 1996 and 1997;
- adopt Peter and Jeffrey's expert's appraisal value of the home;
- either remove Russell as personal representative or restrict his nonintervention powers; and

- assess attorney fees against Russell personally.

This equitable action was tried to the court without a jury. The court entered findings and conclusions essentially in favor of Peter and Jeffrey.

## DISCUSSION

STANDARD OF REVIEW

We review findings of fact for substantial evidence. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959). We review conclusions of law de novo. *Bishop v. Miche*, 137 Wn.2d 518, 523, 973 P.2d 465 (1999). A trial court's decision to remove a personal representative under its supervision receives considerable deference and will not be disturbed absent a manifest abuse of discretion. *In re Estate of Ehlers*, 80 Wn. App. 751, 761, 911 P.2d 1017 (1996).

Here, the dispositive issue is whether Peter and Jeffrey Jones made a prima facie showing sufficient to bring this nonintervention estate under the supervision of the court. Jurisdiction is a question of law which we review de novo. *In re Estate of Peterson*, 102 Wn. App. 456, 462, 9 P.3d 845 (2000); *In re Marriage of Murphy*, 90 Wn. App. 488, 493, 952 P.2d 624 (1998). We conclude as a matter of law that jurisdiction to intervene was not established.

JURISDICTION

Russell first challenges the superior court's subject matter jurisdiction over probate of a will with nonintervention powers.

The court's jurisdiction over nonintervention probate proceedings is statutory. *In re Estate of Bobbitt*, 60 Wn. App. 630, 632, 806 P.2d 254 (1991). Our review is therefore a matter of statutory interpretation. Our primary goal is to give effect to the intention of the legislature. *Dep't of Transp. v. State Employees' Ins. Bd.*, 97 Wn.2d 454, 458, 645 P.2d 1076 (1982). The entire sequence of statutes enacted by the same legislative authority relating to a given subject

must be considered in determining legislative purpose. *In re Marriage of Little*, 96 Wn.2d 183, 189, 634 P.2d 498 (1981). We conclude that giving effect to the entire sequence of probate statutes here requires reversal.

■ Once an order of solvency is entered, administration of the nonintervention estate is exclusively in the hands of the executor. The probate court then loses jurisdiction of the estate. *In re Estate of Coates*, 55 Wn.2d 250, 256, 347 P.2d 875 (1959); *Bobbitt*, 60 Wn. App. at 632 (quoting *In re Estate of Peabody*, 169 Wash. 65, 70, 13 P.2d 431 (1932)). If the court is to regain jurisdiction of the estate, its jurisdiction must be invoked by application made by a person authorized by the statute to do so. RCW 11.68.070; *Bobbitt*, 60 Wn. App. at 632 (quoting *Peabody*, 169 Wash. at 70). A beneficiary of the estate is a person authorized to invoke the jurisdiction of the court by petitioning for removal of a nonintervention personal representative. RCW 11.68.070; *In re Estate of Ardell*, 96 Wn. App. 708, 717, 980 P.2d 771 (1999); *Bobbitt*, 60 Wn. App. at 632; *Peabody*, 169 Wash. at 70. The petition must be supported by a prima facie showing that the personal representative has failed to faithfully execute his trust or is subject to removal for any of the reasons specified in RCW 11.28.250.

Here, Peter and Jeffrey invoked the court's jurisdiction by petitioning for Russell's removal under RCW 11.68.070. They alleged that Russell failed to execute his trust by neglecting his duties and mismanaging the estate. The petition conferred upon the court the jurisdiction to inquire. That is, the removal petition authorized the court to conduct a hearing to determine whether or not good cause had been shown for the court to reassume jurisdiction over the administration of this estate.

■ The first question before the superior court when a petition to remove a nonintervention personal representative is filed is not whether the alleged conduct was reasonable, as the question would be in the case of administration of an estate under the continuing direction of the court. In the matter of a nonintervention executor, the court must

first determine that the disputed conduct was so irregular as to show that the executor did not faithfully discharge his trust. *In re Estate of Holmgren*, 189 Wash. 94, 96, 63 P.2d 504 (1937). Only after the trial court so finds upon competent and substantial evidence may the court assume general jurisdiction and intervene in the administration of the estate. *Coates*, 55 Wn.2d at 259-60.

We find insufficient facts in the record here to establish grounds upon which the court was empowered to intervene in the first instance.

Chapter 11.68 RCW governs nonintervention wills. Chapter 11.28 RCW governs the administration of estates under the supervision of the court. RCW 11.68.070 provides that the court may reassume jurisdiction over a nonintervention estate upon a showing that the executor has failed to faithfully execute his trust, or for any of the reasons "specified" in the court-supervised administration provisions of RCW 11.28.250.

To "specify" means: "to mention or name in a specific or explicit manner: tell or state precisely or in detail." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2187 (1993). RCW 11.28.250 specifies the following reasons to justify removing a personal representative: that the executor has wasted, embezzled, or mismanaged the estate; perpetrated fraud upon the estate; or neglected to perform any act required of a personal representative. Because chapter 11.28 RCW governs probates administered under the broad discretion of the supervising court, RCW 11.28.250 also includes a catch-all provision that the personal representative may also be removed "for any other cause" which the court may deem sufficient. RCW 11.28.250.

But RCW 11.68.070 limits the reasons justifying the removal of a nonintervention personal representative to the reasons *specified* in RCW 11.28.250, i.e., waste, embezzlement, mismanagement, fraud, and neglect. The catch-all "for any other cause" deemed sufficient cannot be incorporated into the nonintervention provisions without doing violence to the entire nonintervention scheme.

■ We conclude that the superior court had jurisdiction to conduct a hearing to determine whether Russell was guilty of faithlessness, waste, embezzlement, mismanagement, fraud, or neglect. But we do not agree that the showing by Peter and Jeffrey, even if accepted at face value, approaches the degree of culpability necessary to establish superior court jurisdiction to intervene and resolve disputes about the fairness or reasonableness of Russell's administration of the estate. An honest difference of opinion as to the reasonableness of the executor's actions is not enough to vest the court with the authority to remove him. A showing must be made of faithlessness and intent to "mulct" the estate. *Coates*, 55 Wn.2d at 260; *In re Estate of Coffin*, 7 Wn. App. 256, 264, 499 P.2d 223 (1972).

INTERIM ACCOUNTING

The main bone of contention between the executor of this estate and the other beneficiaries was whether an interim accounting was owed. Russell contends that the nonintervention statute does not require an accounting until the estate is finally closed. Peter and Jeffrey respond that common law principles governing fiduciary trusts are implied in the statute and impose a duty for an interim accounting. The trial court concluded that Russell breached his fiduciary duties in refusing to turn over financial information and records concerning the estate before completing his administration. This was error.

■ Washington law is well settled. Unless the will requires interim accountings, the nonintervention personal representative breaches no duty by providing none. *Ardell*, 96 Wn. App. at 718.

Former RCW 11.68.030 (1977), *repealed by* Laws of 1997, ch. 252, § 87, confers upon the nonintervention personal representative the authority to administer the estate without the intervention of the court. A nonintervention executor is "vested with a wide latitude of discretion in administering the estate." *In re Estate of Elvigen*, 191 Wash. 614, 618, 71 P.2d 672 (1937). It is true that the nonintervention executor is under a trust obligation to carry out the direc-

tions of the will, and where the will's instructions are lacking or insufficient, to "follow the general laws of administration." *In re Estate of Bonness*, 13 Wn. App. 299, 307, 535 P.2d 823 (1975). He must keep records and *ultimately* render an accounting to the beneficiaries. *Id.* at 307-08. But he is under no obligation to do so on an interim basis.

But to "follow the general laws of administration" does not mean that the nonintervention personal representative is bound by the rules for a personal representative who is under the supervision of the court. Former RCW 11.68.090 (1988) sets forth the nonintervention administrator's powers. It specifically relieves the nonintervention executor from the general requirements for settling estates as set forth in chapter 11.76 RCW. That is, he is relieved of the obligation to provide an accounting. He is also not required to file the annual estate report required by RCW 11.76.010 as a personal representative without nonintervention powers would be.

Peter and Jeffrey invoke the *Restatement (Second) of Trusts* §§ 172, 173 (1959) for the proposition that a trustee has a common law duty to account to the beneficiaries on demand. *See, e.g., State v. Taylor*, 58 Wn.2d 252, 258, 362 P.2d 247 (1961). A trustee, they contend, has the fiduciary duty "to inform the beneficiaries fully of all facts which would aid them in protecting their interests." *Allard v. Pac. Nat'l Bank*, 99 Wn.2d 394, 404, 663 P.2d 104 (1983). But the *Restatement* specifically excludes the administration of a decedent estate from the definition of a trust. RESTATEMENT (SECOND) OF TRUSTS § 6 (1959). And, by the plain language of former RCW 11.68.090, the common law trust doctrine does not apply to *nonintervention* executors.

Here, Peter and Jeffrey petitioned for interim information pursuant to former RCW 11.96.070 (1994), *repealed by* Laws of 1999, ch. 42, § 637. But that statute entitles legatees to petition for a declaration of rights. It does not authorize the court to order production of documents. Former RCW 11.96.070; *In re Estate of Stockman*, 59 Wn. App. 711, 714-15, 800 P.2d 1141 (1990).

In addition to an accounting, Peter and Jeffrey's petition demanded discovery of primary documents including bank statements, checks and check registers, bookkeeping entries, all expenditures, federal tax returns, and assets disposed of. The petition alleged that Russell's refusal to provide these documents was "indicative of his breach of fiduciary duties." CP at 134. This is contrary to the plain language of the nonintervention statutory scheme.

In the case of a nonintervention administrator, the court is not authorized to intervene unless the personal representative fails to execute his trust faithfully. Upon a prima facie showing of cause by an estate beneficiary, the court may cite the personal representative into court, and, after a hearing, restrict his powers or remove him. RCW 11.68.070. Good cause includes waste, embezzlement, mismanagement of the estate, fraud, or neglect of any act required of a personal representative. RCW 11.28.250; RCW 11.68.070.

The interests of the beneficiaries of a nonintervention estate are protected by the statutory requirement for an inventory at the beginning of the estate administration and the beneficiaries' right to petition for an accounting at the end. Former RCW 11.44.015; former RCW 11.68.110 (1990). If they suspect skulduggery in between, a prima facie showing is sufficient to obtain a removal hearing. RCW 11.68.070.

OTHER GROUNDS FOR REMOVAL

In addition to Russell's failure to provide interim accountings, the court's reasons for removing him as executor included commingling of funds, living in the house rent free, buying the house at below market value, discrepancies in the records of securities transactions and bank accounts, driving the estate car, and retaliatory reappraisal of the estate piano.

*Failure to Provide an Interim Accounting.* The current version of RCW 11.68.065 permits estate beneficiaries to demand interim reports after one year of estate administration. But this 1997 amendment does not apply retroac-

tively to the death of Marcella Jones in 1995. The addition of a mechanism whereby beneficiaries can obtain interim reports highlights the fact that prior law did not require them. Until 1997, the right to seek removal of the personal representative under RCW 11.68.070 was the only available mechanism to control the conduct of a personal representative with nonintervention powers. *In re Estate of Kerr*, 134 Wn.2d 328, 342, 949 P.2d 810 (1998).

Nothing in this will, the applicable statutes, or case law required Russell to provide interim accountings to these beneficiaries. And the court erred in requiring one.

The beneficiaries may petition for an accounting after the nonintervention executor files his certificate of completion. Former RCW 11.68.110. Jeffrey and Peter did this on January 25, 1999. But this petition was not acted upon. And without this accounting, the trial court could not determine whether Russell faithfully executed his trust. And neither can we. *Wilkins v. Lasater*, 46 Wn. App. 766, 780, 733 P.2d 221 (1987). The *Lasater* court remanded for further proceedings, including a formal accounting to the trial court. We will do the same. Without it, the remaining grounds for removal of Russell are not supported by this record, and the court's intervention was premature.

▇▇▇ *Commingling*. The court entered findings and conclusions that Russell commingled estate and personal funds.[1] But the record does not support this finding. Russell wrote his brothers checks at Christmastime and then reimbursed himself from the estate for those checks only. He gained no personal advantage by providing his brothers with extra holiday cash in the form of a partial distribution. He kept transparent records of the transactions reimbursing his personal account from the estate when estate funds became available. This is not commingling.

▇▇▇ Even if it were, the nonintervention estate personal representative, unlike a trustee, has no obligation to identify and segregate assets and expenses while the adminis-

---

[1] CP at 105 (Conclusion of Law 10).

tration of the estate is ongoing. *In re Estate of Snyder*, 122 Wash. 65, 209 P. 1074 (1922). Commingling of funds by a personal representative may be inadvisable, but it does not constitute misconduct absent a showing of financial harm to the estate. "[I]f the executor ultimately accounts for all of such funds, it cannot be said that he is guilty of misconduct, or that those entitled to receive under the will have been injured." *Id.* at 68. Here, moreover, the funds were accounted for.

 *House*. Self-dealing by a trustee constitutes a breach of fiduciary duty. *Lasater*, 46 Wn. App. at 779. If Russell were a trustee instead of an executor, his purchase of the house over the objections of the beneficiaries might well be grounds to remove him. *Ehlers*, 80 Wn. App. at 760-61. But Russell was not a trustee. He was a nonintervention executor who was also a beneficiary of the estate. As such, he did not breach his trust by electing to take real property as his distributive share. *Id.* at 763.

The rule that sales of estate property by the executor to himself are voidable at the option of the beneficiary has no application where the language of the will expresses the clear intention of the testatrix to authorize the executor to buy and sell estate property. *Galin v. Johnson*, 457 So. 2d 359, 363-64 (Ala. 1984). "We can only speculate as to why the testatrix granted her executrix such broad and unlimited power to administer her estate, but she has a legal right to do so, and our duty is to effectuate her unambiguous intention." *Id.* at 364.

Here, Ms. Jones named Russell as both nonintervention executor and coequal beneficiary. Her will thus empowered him to distribute the house to himself. *In re Estate of Elliott*, 22 Wn.2d 334, 355, 156 P.2d 427 (1945) (power to distribute includes power to determine to whom distribution will be made).

*Hearsay Objections*. The court accepted Jeffrey and Peter's appraisal value of the house and rejected Russell's. The court also did not believe Russell acted in good faith in assessing the value of the house. The court rejected as

inadmissible hearsay a number of Russell's exhibits showing bids solicited and received from construction and repair companies. They were offered to establish, not the truth of the quoted repair estimates, but Russell's good faith basis for his valuation of the estate house.

If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of the matter asserted and the statement is not hearsay. FED. R. EVID. 801(c) advisory committee's note. The Washington rule is the same as the federal rule. ER 801 cmt.

The bids here may have been inadmissible to prove the truth of the matter asserted, i.e., that the quoted prices reflected the true cost of repairs. But, as offers on commercial business forms, the proposed exhibits were admissible to show that Russell did not simply invent the defects he claimed to have considered in reaching his assessed value. They were relevant to establish his good faith. Any objection went to weight, not admissibility. It was error to exclude them.

*Bank Record Discrepancies*. The record does not establish discrepancies. The court's findings on this issue are qualified.

In its oral ruling, the court explained that it was not making a finding on alleged discrepancies in the financial records. The court intended only to direct the attention of the successor administrator to these allegations. Peter ultimately acknowledged that the perceived discrepancies were nonexistent. Report of Proceedings at 460-64.

*Car and Piano*. The court found that Russell mismanaged the estate by putting a significant number of miles on a 1987 Buick that was part of the estate, and by spitefully increasing the appraisal value of the estate piano after Jeffrey selected it as part of his share. The alleged mismanagement of these items is irrelevant, even if true. The court found that Russell sold the car for its blue book value, which is what it was worth. No waste, no misman-

agement. *In re Estate of Hookom*, 52 Wn. App. 800, 806, 764 P.2d 1001 (1988). Russell's state of mind in increasing the appraisal value of the piano is also irrelevant. He had the power to do it under the terms of the will and the nonintervention statutes. *In re Estate of Million*, 18 Wn.2d 824, 833, 140 P.2d 560 (1943).

*In re Estates of Aaberg* does not support a different result. *In re Estates of Aaberg*, 25 Wn. App. 336, 607 P.2d 1227 (1980). In *Aaberg*, the nonintervention executor failed to include in the estate inventory a car sold to a legatee for $125, and was uncertain whether the household goods were inventoried before or after the legatees removed the distributed goods. Division Two of this court held this constituted sufficient grounds to remove the executor under RCW 11.68.070 (nonintervention). *Aaberg*, 25 Wn. App. at 339-40. But the authority relied on by *Aaberg* is *In re Estate of Beard*.[2] In *Beard*, however, the personal representative did not have nonintervention powers, because the prerequisite decree of solvency was never entered. *In re Estate of Beard*, 60 Wn.2d 127, 133, 372 P.2d 530 (1962).

*Conflict of Interest, Ill Will*. Whether the estate house was a fair equivalent of a one-fourth share of the total estate depended on how it was appraised. Therefore, to the extent Russell was both executor charged with appraising the value and beneficiary taking the house as his distributive share, he was conflicted. But an inherent conflict of interest is inevitably created any time a beneficiary is designated executor of the will. There was no showing here that the testatrix did not know what she was doing when she selected Russell, rather than Peter or Jeffrey or an outsider, to administer her estate.

The record does not support a finding of faithlessness or specific acts of mismanagement, fraud, or neglect sufficient to constitute grounds to assume jurisdiction over this estate or to remove the nonintervention personal representative.

---

[2] *In re Estate of Beard*, 60 Wn.2d 127, 372 P.2d 530 (1962).

APPOINTMENT OF OUTSIDE PERSONAL REPRESENTATIVE

Inasmuch as we reverse the court's removal of the personal representative, we need not reach the issue of his replacement.

We simply note in passing that the testatrix expressed her wish that David succeed as personal representative if for any reason Russell could not serve. The court's decision to pass over David and appoint an outside personal representative was based in no small measure on the court's obvious disapproval of Russell and dissatisfaction with the manner of his exercise of statutory nonintervention authority. The decision to remove Russell is not supported by this record. There is even less support for the decision to appoint a successor other than the one named by the testatrix.

ATTORNEY FEES

The court awarded Peter and Jeffrey fees as prevailing party under RCW 11.68.070 to be paid by Russell personally. We reverse the fee award.

Generally, this court defers to the trial court on the question of attorney fees. We will overturn the decision to award fees only on a clear showing of abuse of discretion. *Ehlers*, 80 Wn. App. at 764.

Estate beneficiaries are entitled to reasonable attorney fees if their legal action benefits the estate as a whole, not just themselves. *In re Estate of Kerr*, 134 Wn.2d 328, 341, 949 P.2d 810 (1998). The personal administrator is entitled to fees if the petition for removal provides no benefit to the estate but, instead, severely depletes the assets. *Id.* at 340. Fees should not be assessed against an estate when the litigation could not have resulted in any substantial benefit to the estate. This results in unfair costs to those beneficiaries who do not join in the litigation. *Id.* at 340-41.

The court may award attorney fees "as justice may require." Former RCW 11.96.140 (1994), *repealed by* LAWS OF 1999, ch. 42, § 637. This includes an award of fees to the estate when the personal representative successfully defends an action for removal. *Kerr*, 134 Wn.2d at 342. The

overriding consideration must be whether the litigation benefited the estate and whether the conduct of the parties or counsel was " 'vexatious or litigious.' " *Lasater*, 46 Wn. App. at 781 (quoting *Allard*, 99 Wn.2d at 407).

The action to force an interim accounting could not possibly have succeeded. The estate is therefore entitled to fees for defending the attempt to force one. Those fees should be assessed against Peter and Jeffrey personally lest David's distributive share be diminished. *Kerr*, 134 Wn.2d at 340-41. Since Russell ultimately prevailed, we also reverse the award of fees for replacing Russell and rejecting David as personal representative. Those fees should likewise be assessed against Peter and Jeffrey personally.

## CONCLUSION

The court's reasons for removing Russell as personal administrator might survive review under the deferential standard applicable to a court's exercise of its broad statutory discretion in the administration of estates supervised by the court. But the question is not, in the first instance, whether the conduct of the executor was reasonable in the opinion of the court. Rather, the question is whether the executor faithfully discharged his trust as defined by statute. The court's reasons here are not sufficient under that standard to establish jurisdiction over the administration of a nonintervention will or to remove a nonintervention personal representative.

The decision of the trial judge is reversed.

BROWN, C.J., concurs.

KURTZ, J. (dissenting) — I respectfully dissent. Under RCW 11.68.070, the court has discretion to remove a personal representative who has nonintervention powers if the personal representative fails to execute his or her trust faithfully or is subject to removal for any reason specified in RCW 11.28.250. "RCW 11.28.250 authorizes the court to

revoke testamentary letters if it has reason to believe the personal representative wasted, embezzled or mismanaged estate property, or if the court finds for other reason such action is necessary." *In re Estate of Ardell*, 96 Wn. App. 708, 718, 980 P.2d 771 (1999). The trial court offered a number of reasons for removing the personal representative. In reversing the trial court's decision, the majority rejects all of those reasons. But if even one reason is valid and supported by the record, we should defer to the trial court. *In re Estates of Aaberg*, 25 Wn. App. 336, 339, 607 P.2d 1227 (1980). In two instances, the personal representative's conduct provided the trial court with a sufficient basis for removing the personal representative.

Preliminarily, I note that the court made its findings after a four-day trial, at which it considered the testimony of the personal representative. The personal representative disagrees with many of the court's findings and argues that the trial court should have accepted his evidence. But, the issue on appeal is whether the trial court's findings are supported by substantial evidence. They are. And, because they are, the trial court's findings are verities on appeal. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

Sometime after Marcella Jones's death, her personal representative retained an appraiser to value the estate's personal property. The appraiser placed a $5,000 value on Ms. Jones's piano. Thereafter, the personal representative authorized Jeffrey Jones to take the piano and move it to his home in Texas. Jeffrey Jones believed that he had received a $5,000 distribution from his mother's estate. Five years later, he learned that the personal representative had assigned a $14,950 value to the piano for distribution purposes. Jeffrey Jones believes that the personal representative arbitrarily increased the value of the piano after he, along with his brother Peter, requested that the court remove Russell Jones as the personal representative of their mother's estate. The trial court agreed with Jeffrey Jones, finding that the value of the piano was $5,000, and concluding that the personal representative's motivation

for increasing the value of the piano was in retaliation for the litigation regarding the administration of the estate.

When his mother died, Russell Jones was living with her. After her death, he continued to live in her house and use the house as a law office. For the first two years of the probate, the estate paid taxes, utilities, and insurance on the house. At no time, did the personal representative pay rent for the use of the house. The personal representative's occupancy of the house became a source of conflict between him and two of his brothers. After the trial, the court found the rental value of the house was $900 per month and that the personal representative was indebted to the estate for his use of the house.

During his administration of his mother's estate, the personal representative had the house professionally appraised. When he informed his brothers of the appraisal, they asked to see it. For some reason, the personal representative refused to share this information with them. Thereafter, the brothers used the personal representative's failure to pay rent and to share the appraisal information as grounds for their request that the personal representative be removed. During that litigation, the personal representative disclosed that he had taken the estate house as part of his distributive share of the estate. He explained that he had been living in his own house because he had executed a deed from the estate to himself in September 1996. This testimony was disputed at the trial because the personal representative had never filed the deed, did not produce the deed, and delayed disclosure of this information until 1998. For distribution purposes, he assigned a value of $125,900 to the house. He also claimed that the estate's payments of taxes, utilities, and insurance—in the amount of $4,804.25—represented estate distributions to him. After the trial, the court found that the value of the house for distribution purposes was $159,000.

The personal representative emphasizes that his mother's will granted him nonintervention powers to administer her decedent estate. He even challenges the jurisdiction of

this court to review his conduct as the estate's personal representative. While acknowledging the authority of a personal representative granted nonintervention powers, the majority holds that the petition to remove the personal representative invoked the jurisdiction of the superior court. At that point, RCW 11.68.070 invested the trial court with broad discretion to remove a personal representative who has nonintervention powers for any reason specified in RCW 11.28.250, including "for any other cause or reason which to the court appears necessary."

On review, we may attribute less importance than the trial court to the conduct of the personal representative. It could be said that his conduct, while high-handed, secretive, and even self-serving, was authorized by the extraordinary power granted to him by his mother—the power to administer her estate without supervision. But the trial court, after hearing and weighing the evidence, saw these acts in a different light and attributed greater importance to them. To the trial court, the personal representative had misused his authority by overvaluing the piano for vindictive purposes and by undervaluing the house for personal benefit. We should defer to the judgment of the trial court, as we are explicitly instructed in RCW 11.28.250.

Review granted at 150 Wn.2d 1010 (2003).